MRS. EARL A. MEEKS, MRS. PIRLEY BYRUM, and MRS. RAY B. WALDAUER, Plaintiffs-in-Error, v. RONALD YANCEY, Defendant-in-Error (three cases). —311 S. W. (2d) 329.

Western Section at Jackson. July 25, 1957.

Petition for Certiorari denied by Supreme Court December 6, 1957.

Harold R. Ratcliff, Howard R. Paul, Memphis, for plaintiffs in error.

Charles L. Neely, Robert L. Green, Memphis, for defendant in error.

CARNEY, J.   The three plaintiffs below, Mrs. Earl A. Meeks, Mrs. Pirley Byrum and Mrs. Ray B. Waldauer, appeal in error because of the inadequacy of jury verdicts returned in their favor against the defendant below, Ronald Yancey.  The causes were consolidated and tried to the same jury resulting in verdicts of $750 in favor of Mrs. Meeks, $450 in favor of Mrs. Byrum, and $300 in favor of Mrs. Waldauer.

These cases arose out of an automobile accident which took place at the intersection of East Parkway and Broad Avenue in Memphis, Tennessee, on Friday afternoon, June 29, 1956, about 2:00 P.M.  It was raining and the streets were slippery.

The automobile in which the plaintiffs were riding was a Chevrolet owned by Mrs. Waldauer. In addition to the three plaintiffs, the other occupants of the car were Mrs. Lera Berg, Mrs. Louise Simpson and Mr. J. W. Byrum. The parties are related as follows: Mrs. Pirley Byrum is the mother of Mrs. Meeks, Mrs. Simpson, Mrs. Berg and Mr. J. W. Byrum. Mrs. Waldauer is related to the parties only in that Mrs. Lera Berg married a brother of Mrs. Waldauer. The parties were on their way to Memorial Park in Memphis, Tennessee, to place some flowers upon the grave of Mrs. Pirley Byrum's late husband who had died several months before.

Mrs. Simpson and Mrs. Berg also filed suit for damages against the defendant but only the three cases above mentioned were tried in the present consolidated causes, the suits of Mrs. Simpson and Mrs. Berg being still pending and untried. The other occupant of the car, Mr. J. W. Byrum, did not file suit for damages.

The driver of the Waldauer car, Mrs. Berg, was travelling southward on East Parkway in Memphis, Tennessee, and stopped at the intersection of Broad Avenue which makes what is known as a "T" intersection. Broad Avenue does not cross East Parkway but only intersects it from the east. The driver, Mrs. Berg, intended to make a left turn from East Parkway eastward onto Broad Avenue but had to stop for the traffic control signal which was suspended overhead in the center of the intersection.

While the plaintiffs were stopped at this intersection, and about the time the traffic control signal turned green, the defendant, Ronald Yancey, ran his automobile into the rear of the Waldauer car. It struck with very small

force and did no appreciable damage to either of the automobiles though the plaintiff, Mrs. Waldauer, contends that the exhaust pipe on her car was bent and that there was a small dent in the rear bumper. Mrs. Waldauer and the other plaintiffs contended that the defendant's car knocked them forward about the length of their automobile whereas the defendant contended that he knocked the Waldauer car forward no more than one foot.

The defendant pleaded not guilty and contributory negligence upon the trial. He testified that as he approached the intersection the traffic light turned green but the Waldauer car could not make the left turn because of approaching traffic from the south, that he applied his brakes but did not get the proper stoppage in time to prevent the accident. The Trial Judge charged the jury that the defendant admitted negligence and limited the inquiry of the jury to the amount of damages sustained by the plaintiffs.

The plaintiffs have filed the following assignments of error:

"I.

"The Court erred in overruling the motions for new trials.

"This was error because:

1. The verdict in each case is inadequate.

2. The verdict in each case is grossly inadequate.

3. The verdict in each case is so grossly inadequate as to evince passion, prejudice or unaccountable caprice on the part of the jury."

## "II.

"The court erred in charging the jury as follows:

" 'Now gentlemen, the Court further charges you that at a time a person is negligently injured, he or she is suffering from a pre-existing disease or ailment and the injury negligently inflicted upon said person aggravates or causes the pre-existing injury or disease or ailment to become worse, then he or she would be entitled to recover for the extent or amount that said injury aggravated or caused the pre-existing injury, disease or ailment to become worse. In other words, the law compensates for the extent an old injury or diseased condition was aggravated or rendered worse by said injury negligently inflicted.

" 'The law does not permit a person to recover damages for any disabilities he or she had as a result of disease or ailment existing at the time he or she was negligently injured.'

"This was error because it does not state the law correctly and was not applicable to the facts. It appears without contradiction that each of these plaintiffs had some pre-existing pathology, of which they they were unaware, and which had caused no symptoms, pain or disability prior to the collision. The latent pathology of each of these patients was activated by the collision, and but for the collision probably would never have troubled any of the plaintiffs. In this situation it was error to limit the damages to aggravation of a pre-existing condition as was done with emphasis by the Court."

## "III.

"The Court erred in refusing to give in charge to the jury plaintiffs' special request number one which was as follows:

"Plaintiffs' Special Request Number One

" 'I further charge you that if you find from a preponderance of the evidence that before the accident occurred, one or more of the plaintiffs had a latent condition of the spine and that this collision activated that pre-existing condition then that one or more of the plaintiffs is entitled to recover for all damages proximately resulting from the negligence of the defendant, and the defendant is not entitled to receive a reduction of damages on account of any pre-existing infirmity.

" 'In other words, if the afflictions that the plaintiffs had before the accident did not cause them pain and suffering or disability, and after the collision it did cause pain and suffering or disability, the collision is the proximate cause of the injury sustained, and those plaintiffs are entitled to recover for all ill effects which naturally and necessarily follow the injury in the condition of health in which those plaintiffs were at the time of the accident and it is no defense that the injury might have been aggravated and rendered more difficult to cure by reason of plaintiffs' state of health at that time.'

"This was error because the special request correctly states the law, was applicable to the facts, was not covered by the general charge, and would have corrected a prejudicial error made by the Court in its

general charge. The special request was tendered in writing at the conclusion of the general charge and before the jury retired."

They insist that this court in the recent case of Flexer v. Crawley, 37 Tenn. App. 639, 269 S. W. (2d) 598, improperly narrowed the rule for setting aside verdicts of the jury on the grounds of inadequacy of award from the rule laid down by the Supreme Court of Tennessee in the case of W. T. Grant & Co. v. Tanner, 170 Tenn. 541, 95 S. W. (2d) 926.

In other words, the plaintiffs insist that the appellate court may award a new trial simply where the verdict is obviously inadequate and that it is not necessary for the Court of Appeals or Supreme Court to find that the verdict is so inadequate as to evince passion, prejudice or unaccountable caprice.

In our opinion the rule applied by this court in Flexer v. Crawley was the same rule applied by the Supreme Court in W. T. Grant & Co. v. Tanner though the language was not exactly the same. In each case it was impossible for the court to reconcile the small amount of the verdict with the uncontradicted and unimpeached testimony concerning the plaintiff's injury.

Therefore, we hold that the verdict of a jury concurred in by the Trial Judge will not be reversed for a new trial simply because this court is of opinion from a reading of the record that the plaintiff was not awarded a sufficient amount for her damages. The amount of the damages is primarily one for the determination of the jury. Lunn v. Ealy, 176 Tenn. 374, 141 S. W. (2d) 893.

We now consider the assignment of error of plaintiffs that the verdict of the jury is so grossly inadequate as to evince passion, prejudice or unaccountable caprice on the part of the jury.

Each one of the plaintiffs insisted that she had sustained a whiplash injury to her neck as a result of the car being struck from the rear by the defendant's automobile. Each had been wearing a Thomas collar for the neck injury up until the time of the trial.

The plaintiff, Mrs. Pirley Byrum, age 67, contended that the whiplash injury aggravated an old arthritic condition of long standing and that in addition, she sustained a severe injury to her right knee. She wore a brace on her right knee at the time of the trial. Mrs. Byrum's medical expenses at the time of the trial amounted to $121.60. She was corroborated by the testimony of Dr. Raskind, a neurosurgeon, who estimated her disability at the time of the trial of from five to ten per cent and who estimated that after twenty-four months treatment she would still have a residual permanent disability. Also she was corroborated by the testimony of Dr. Howard, an orthopedic surgeon, of Memphis, Tennessee.

The plaintiff, Mrs. Meeks, age 42, spent nineteen days in the hospital and ten days in neck traction and taking heat therapy treatment. Dr. Raskind testified that she had a disability of approximately five per cent to the low back and a disability of ten to fifteen per cent to the neck and that the whiplash injury to her neck aggravated a pre-existing discogenic condition in her spine. He explained the discogenic disease of her spine to mean that she had sustained a degeneration of the fifth vertebral

disc. Her medical expenses to the time of the trial amounted to $629.75.

The plaintiff, Mrs. Waldauer, contended that the whiplash aggravated a pre-existing arthritic condition in her neck and cervical spine causing her much pain and suffering. She was corroborated by the testimony of her personal physician, Dr. H. G. Rudner, Sr., who had treated her from the time of the collision up until the time of the trial and who had prescribed the Thomas collar for her. Mrs. Waldauer's medical expenses to the time of the trial amounted to $130.

The defendant relied primarily upon the testimony of Dr. A. Roy Tyrer, a neurosurgeon of Memphis, Tennessee, who examined each of the three plaintiffs shortly before the trial.

As to Mrs. Waldauer's injuries, Dr. Tyrer testified as follows: "After completing my examination of Mrs. Waldauer, it was my impression that she, at the time of the accident, had sustained a mild neck strain superimposed upon a rather rigid cervical spine, the result of extensive degenerative discs disease and hypertrophic arthritis. It was my opinion that Mrs. Waldauer's symptoms would gradually subside although it may be a slow process. I do not feel that Mrs. Waldauer has any permanent injuries resulting from the accident. I did not think she would need any further treatment."

With reference to the examination of Mrs. Meeks, Dr. Tyrer testified that he found no objective evidence to support the symptoms which Mrs. Meeks explained to him and which he, Dr. Tyrer, thought were magnified during his examination of her. Dr. Tyrer testified

that in his opinion there was no appreciable injury sustained by Mrs. Meeks as a result of the accident and that she had not sustained any permanent disability.

With reference to the examination of the plaintiff, Mrs. Byrum, Dr. Tyrer testified that he disagreed with the opinion of Dr. Howard concerning Mrs. Byrum's disability. Dr. Tyrer testified that in his opinion Mrs. Byrum had no permanent injury nor permanent disability and that she needed no further treatment and that he could find no gross disturbance to the right knee.

In our opinion the verdicts of the jury in favor of these three plaintiffs can be reconciled upon the hypothesis that the jury might have found that the plaintiffs were not injured by the collision as badly and as seriously as they contended and that they had magnified their injuries. Dr. Tyrer's testimony certainly supports such hypothesis. Hence, we cannot say that the verdicts of the jury in these three cases are so inadequate as to evince passion, prejudice or unaccountable caprice upon the part of the jury and the assignment of error No. I is respectfully overruled.

Assignment of error No. II insists that the Trial Judge erroneously charged the jury on the question of recovery for aggravation of an existing injury or disease.

Assignment of error No. III insists that plaintiffs' special request No. I which was refused by the Trial Judge represented a proper charge to the jury on this question.

There was evidence in the record that each of these three plaintiffs, at the time of the collision were suffering from a pre-existing degeneration of the neck and cervi-

cal spine which pre-existing condition had produced no symptoms and caused no discomfort prior to the collision. There was further testimony that the whiplash injury which the plaintiffs alleged they received in the blow from the defendant's automobile aggravated these latent or pre-existing conditions causing them considerable pain and suffering.

From 15 Am. Jur.—Damages—page 490, we quote as follows:

"Sec. 81.—Latent Disease or Weakness: Predisposition to Disease.—The general rule seems to be that where the result of the accident is to bring into activity a dormant or incipient disease, or one to which the injured person is predisposed, the defendant is liable for the entire damages which ensue, for it cannot be said that the development of the disease as a result of the injury was not the consequence which might naturally or ordinarily follow as a result of the injury, and therefore, the negligent person may be held liable therefor. In other words, if a latent condition itself does not cause pain, suffering, etc., but that condition plus an injury caused such pain, the injury, and not the latent condition, is the proximate cause. Thus, although the damage done to a child by an injury appears to be aggravated by a latent hereditary hysterical diathesis, which had never exhibited itself before the accident and might never have developed except for it, the party in fault will be held for the entire damage as the direct result of the accident. The same rule applies where an injury aggravates a latent case of tuberculosis of the knee. Of course, where there was a predisposi-

tion to disease, the fact of its development after a personal injury will not be considered as an element of damage when it is doubtful whether its development was in any way caused by the injury.''

The plaintiffs-in-error rely very strongly upon the case of Elrod v. Town of Franklin, 1917, 140 Tenn. 228, 204 S. W. 298, and the language of the special request tendered by the plaintiffs below, refused by the Trial Judge, was taken from the opinion of the Tennessee Supreme Court in Elrod v. Town of Franklin.

From Elrod v. Town of Franklin, supra, beginning at page 239 of 140 Tenn., at page 301 of 204 S. W. we quote as follows:

"In defining plaintiff's measure of damages the trial judge made the following statement in his principal charge:

" 'And you further find that said fall, concurring with said previous injuries from childbirth, proximately caused other and additonal injuries to plaintiff which would not have resulted at that time but for said fall, then, in that event, you should find damages for the plaintiff in such sum as in your judgment will compensate her for the injuries thus proximately resulting from said fall, but in no event to exceed the amount laid in the declaration, to wit, $15,000.'

"The Court of Civil Appeals held this was error, and further held that the measure of damages under the facts of the case should be as follows:

" 'If you further find that said fall proximately caused other and additional injuries to plaintiff,

which would not have resulted at the time but for said fall, then she would be entitled to recover dam-ages for such other and additional injuries.'

"While the language of the judge may be some-what inapt, we think it embodies the correct rule. The holding of the Court of Civil Appeals would limit the recovery which plaintiff was entitled to have to the results of the actual injuries sustained without regard to her condition at the time of the fall. The liability of one who negligently or unlawfully injures the person of another is not to be measured by the physical strength of the party injured or his capacity to endure suffering. One of weak physical structure, or small vitality, or in ill health, has as much right to protection from violence as a robust athlete, and in either case the physical injury, the bodily harm, which is actually caused by the violence, whether one be strong or weak, healthy or sick, is the natural consequences of the wrong. The defendant is responsible for all ill effects which naturally and necessarily follow the injury in the condition of health in which the plaintiff was at the time of the fall, and it is no defense that the injury might have been aggravated and rendered more difficult to cure by reason of plaintiff's state of health at that time, or that by reason of latent disease the injuries were rendered more serious to her than they would have been to a person in robust health. If the afflictions which plaintiff had before the fall did not cause her pain and suffering, as she says they did not, but after the fall they did cause pain and suffering, the fall is the proximate cause of the injuries sustained.

The defendant is not entitled to receive a reduction of the damages which plaintiff suffered on account of such infirmities. The foregoing statement of the rule is supported by a great preponderance of authority. Cases will be found collected in 48 L. R. A., N. S., 120, and 15 L. R. A., N. S., 740; Louisville & N. R. R. Co. v. Daugherty (Ky.), 108 S. W. 336, 15 L. R. A., N. S., 740, supra; Jones v. City of Caldwell, 20 Idaho 5, 116 P. 110, 48 L. R. A., N. S., [119] 120, supra.

"In our own case of Louisville & N. Railroad Co. v. Northington, 91 Tenn. 56, 17 S. W. 880, 16 L. R. A. 268, the doctrine above stated was recognized. This was a death case, but the court approved a charge which said in substance that, if the deceased already had a fatal disease from which there was no hope of recovery, and his death was inevitable from that disease in a short time, and the injury was slight and of such a character as to aggravate the disease, and he died of the disease, and not the injury, the plaintiff could not recover; but if death was hastened, or occurred sooner, by reason of the injury, than it otherwise would, then the injury was the cause of death. The court examined authorities pro and con and accepted the foregoing statement as embodying the true doctrine. In the course of the opinion the court made this statement:

" 'A man might be suffering from an incurable disease, or a mortal wound, with only two days to live, when a negligent wrongdoer inflicted upon him an injury which in his condition of debility took his life or developed agencies which destroyed him in

one day, and yet the latter wrong be in a legal sense the cause of his death, though it only hastened that which on the next day would have inevitably happened.' "

Dr. Tyrer, witness for defendant, admitted, in substance, that the plaintiff, Mrs. Waldauer, had sustained some injury which aggravated her pre-existing arthritic and disc degeneration condition as a result of the negligence of the defendant.

Let us assume that Mrs. Waldauer, at the time of the collision, had a latent diseased condition of one of her legs and that only a very light blow negligently inflicted by the defendant caused said diseased bone to break; a blow so slight it would not have broken a normal or healthy leg. Let us assume further that the diseased condition of the bone was so serious that the bone would not and could not heal and that it became necessary to remove this broken diseased leg. Certainly under these circumstances the plaintiff, Mrs. Waldauer, would have been entitled to a recovery for the loss of her leg, the pain and suffering resulting therefrom and all medical expenses necessary to treat said injury. The defendant would be entitled to no reduction in damages under these circumstances because of the fact that the plaintiff lost a badly diseased leg as distinguished from a healthy or normal leg.

Under these assumed circumstances, a jury, under the charge as given by His Honor in the cases at bar, would have been required to compute plaintiff's injury on the basis of the aggravation of a pre-existing diseased leg rather than on the basis of the plaintiff's actual proximate injury sustained as a result of the defendant's

negligence, to wit, the loss of her entire leg. Hence, we feel constrained to hold that His Honor, the Trial Judge, was in error in giving the charge assailed in assignment of error No. II and said assignment of error is sustained.

Since this error goes to the very heart of the claim for damages on the part of each of these three plaintiffs, the judgment of the lower court must be respectfully reversed and each case remanded for a new trial.

With reference to plaintiffs' special request No. I set out and described in assignment of error No. III we think the charge was technically correct and should have been given. A similar charge in substantially the same language was approved by the Court of Appeals in the case of White v. Seier, 37 Tenn. App. 437, 451, 264 S. W. (2d) 241. Assignment of error No. III is also sustained.

Judgment will be entered remanding the cases for a new trial as above set out and the costs of this appeal will be taxed against the defendant-in-error, Ronald Yancey.

Avery, P. J. (Western Section) and Bejach, J., concur.