318 So.2d 645 (1975)
Alice Villa, widow of Joseph Ayala and Joseph R. AYALA
v.
BAILEY ELECTRIC COMPANY, INC., et al.
No. 6603.
Court of Appeal of Louisiana, Fourth Circuit.
July 29, 1975.
Rehearing Denied September 9, 1975.
Writ Granted November 14, 1975.
*648 Arthel J. Scheuermann, New Orleans, for plaintiffs-appellants.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert Henry Sarpy, Jr., New Orleans, for Bailey Electric Co., Inc. and Travelers Ins. Co.
Robert J. Young, Jr., Michael K. Fitzpatrick, and Edward L. Levert, Jr., New Orleans, for Louis Bastion.
Edward F. Wegmann and Fred P. Westenberger, New Orleans, for Lee Del Buno.
Before LEMMON, STOULIG and MORIAL, JJ.
LEMMON, Judge.
This is an action for damages resulting from a fire allegedly caused by the negligence of an employee of Bailey Electric Company, Inc. The fire began on Bailey's business premises and spread to the adjoining apartment building owned by Mr. and Mrs. Joseph Ayala. The judgment, rendered after a trial on the merits, awarded Mrs. Ayala the cost of repairing the building and damages for the wrongful death of her husband, who sustained a fatal heart attack during the fire.
Issues include the negligence of Bailey's employee, the legal causation between that negligence and Ayala's death, Ayala's contributory negligence, and the quantum of damages, as well as incidental issues involving indemnification and appellate procedure.

LIABILITY
Negligence of Bailey's Employee
Prior to the fire Lee Del Buno, Bailey's employee, was cleaning an armature, using an air compressor to spray mineral spirits. He applied the flammable spray within three feet of a gas baking oven, which although turned off had a pilot light that usually remained burning.
Del Buno testified that, while he was cleaning the armature, a fire "started on the ground" and spread; that he tried to stomp it out, but when unsuccessful he called the fire department; and that he made no attempt to use the fire extinguishers on the premises.
Although there was no direct evidence as to the cause of the fire, the circumstances surrounding the occurrence justify an inference of negligence and further indicate that Del Buno's negligence, in using a flammable spray in close proximity to an ignition source, is the most plausible explanation as to the cause of the fire. Hanover Ins. Co. v. Jacobson-Young, Inc., 294 So.2d 564 (La.App. 4th Cir. 1974). We therefore hold that Del Buno's negligent causation of the fire was established by a preponderance of the evidence and that Bailey and its insurer are liable for the resulting damages.
Bailey's Action for Indemnity Against Del Buno
By third party demand Bailey asserted its right to indemnity against Del Buno, for whose negligence Bailey was vicariously liable as employer. However, Bailey's general manager admitted Del Buno was using equipment furnished by Bailey and was following cleaning procedures established by Bailey, as he had routinely done under the direction of his supervisors.
Bailey's liability was therefore based on more than an employer-employee *649 relationship; indeed, Bailey's executives were independently negligent in setting up a cleaning procedure with a flammable spray in the area adjacent to the baking oven. See Hall v. Hartford Acc. & Indent. Co., 278 So.2d 795 (La.App. 4th Cir. 1973), cert. den. La.App., 281 So.2d 753. While an employer is entitled to indemnification against its employee when the employer's liability is merely vicarious, the right to indemnity does not exist when the employer's independent negligence was a contributory cause of the accident.[1] See Hebert v. Blankenship, 187 So.2d 798 (La.App. 3rd Cir. 1966).
Liability of the Building Owner
The trial court's original judgment of July 9, 1973 also cast the owner of the building leased by Bailey. On July 11 the owner applied for a new trial, and on July 25 Bailey and its insurer perfected a suspensive appeal. The court subsequently granted the new trial to the owner only.[2] Then, on November 29, 1973, the court rendered a judgment on the new trial and dismissed the owner from the suit. There were no further appeals.
Since no party appealed from the November judgment after the owner was granted a partial new trial, that judgment decreeing the owner to be free from liability is now final and definitive. C.C.P. art. 1842; C.C. art. 3556(31). The owner's liability is therefore not before us on this appeal.
Del Buno's Negligence as the Legal Cause of Ayala's Death
Mrs. Ayala testified: She and her husband were watching television about 12:45 a. m. when an explosion "rocked" the building. Determining that the adjacent shop was on fire, her husband instructed her to call the fire department and to alert the building tenants, and he then began to spray the side of their house with a garden hose in the narrow alleyway between the two buildings. She saw him again after their house had caught fire, and he wondered why the fireman had not yet started the hoses pumping. He "went back in there", and when he came back out into the street, she saw him bend down as if to help the firemen straighten out a hose, whereupon he collapsed as he began to stand up. After firemen attempted to revive him on the scene with resuscitation and oxygen, they rushed him to the hospital, where he was pronounced dead on arrival at 1:30 a. m. She estimated that her husband had hosed the building for about 20 minutes.
A friend of the Ayalas' married son testified: He came to the scene upon hearing explosions and, after offering help, walked across the street. Because the fire was increasing in intensity, he ran to telephone the Ayalas' son and arrived back at the scene about the same time as the fire department. After Ayala said something about asking firemen to put water on the house, he saw Ayala go into the alleyway, but didn't see what he was doing. He then saw Ayala come out into the street and, while in the area of the fire hoses, grab his side and collapse. He did not see Ayala assist with the hoses.
Ayala had suffered a myocardial infarction in 1963 and an episode of dizziness and rapid heart beat in February, 1971. The fire occurred on June 2, 1971.
Ayala had suffered a myacardial infarcthat, under the circumstances described to him, the "excitement and physical exertion he (Ayala) went through that night could have easily produced a heart attack."
*650 Tort liability is founded upon the existence of a duty and the breach thereof which causes damages. We have held that Del Buno had a duty to use reasonable care in handling flammable materials. The present inquiry is the scope of tort liability to be imposed for breach of that duty. Bailey has admitted liability for damage to the residence (if the finding of Del Buno's negligence is affirmed); however, Bailey denies liability for Ayala's death, asserting that Del Buno's negligence was not the legal cause thereof.
Using the procedure for determining legal cause as outlined in Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970), we first inquire into causation in fact, which is a "but for" question. But for Del Buno's negligence, the fire would not have started and Ayala would not have undergone the exertion and excitement, to which his death was attributed. Stated conversely, since Del Buno caused the fire, and the fire caused Ayala excitement, intense heat and physical exertion which in medical fact caused his death, Del Buno's failure to use care was a cause-in-fact of Ayala's death.
We next inquire whether the duty imposed upon Del Buno was intended to grant protection against risks to persons in Ayala's situation, which is the crucial determination in the case.
Bailey conceded in argument that the rule of conduct, imposing a duty to handle flammable materials carefully, offers protection to persons who are killed or injured in an adjoining building when a negligently caused fire spreads to that building. See Boudreiux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972). We further believe that this rule affords protection to adjoining owners who are killed or injured while attempting to preserve their property from damage or destruction by the negligently caused fire. See 42 A.L.R.2d 494 (1955).
Bailey contends, however, that the duty imposed by this rule does not encompass the risk that a person watching the fire will sustain a heart attack. The question raised by this contention is whether a defendant's responsibility should extend to the results in this particular case.[3]
The exact scope of protection to be afforded against risks created by violation of a duty depends upon the facts and circumstances of each case. There is no fixed rule for determining this element of legal cause.
In the present case the factual findings as to Ayala's activities just before and at the time of his fatal attack are extremely important. In this respect the trial judge stated:
". . . Ayala (was) hosing down the side of his house. At the instructions of firemen on the scene, he ceased this activity and moved away from his home into the street. Moments later, he died of a heart attack."
Thus, the trial judge found as a fact that Ayala was not just simply watching the fire as defendants contend, but rather had undergone physical exertion and exposure to intense heat moments before his death. Under the facts found by the trial judge as supported by the record, Ayala's efforts to protect his property continued until moments before his death. Since the rule of conduct, imposing a duty to carefully handle flammable materials, reasonably contemplates protection of persons killed or injured while prudently acting to preserve their property endangered because that rule was breached, we hold defendants liable for Ayala's death in the course of protecting his property.[4]
*651 Ayala's Contributory Negligence
Defendants argue that Ayala was contributorily negligent in exerting himself with a known heart condition.
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, the standard being that of a reasonable man under like circumstances. Smolinski v. Taulli, La., 276 So.2d 286 (1973). In our opinion Ayala acted as any reasonable man would when confronted with a sudden explosion and fire which endangered his property. We conclude defendants have failed to prove contributory negligence.
QUANTUM
Property Damage
Mrs. Ayala testified that she could not for financial reasons undertake the immediate repair of all damage to the building, but that she purchased materials and hired workmen and eventually expended $10,354.-84 for repair of the fire damage. She identified receipts and cancelled checks in that amount.
Two contractors inspected the fire damage shortly after the fire and testified that their itemized estimates of the cost of repairs were $16,740.00 (exclusive of plumbing and electrical) and $17,603.00.
The trial judge awarded $3,624.19, stating this amount included a deduction for depreciation (apparently a 65% deduction). We disagree with this approach. When property can be adequately repaired, the measure of damages is the cost of restoration, plus the loss of use during the time reasonably necessary for the repairs. Haywood v. Carraway, 180 So.2d 758 (La.App. 1st Cir. 1965); Lambert v. American Box Co., Ltd., 144 La. 604, 81 So. 95 (1919). No deduction is imposed unless the value of the property is enhanced by the repairs.[5] McCormick, Law of Damages § 124 (1935); Oleck, Damages to Persons and Property §§ 208, 216 (1961). Since the evidence established Ayala had worked steadily in renovating the property for 1½ years and the 50-year old building was in generally good condition before the fire except for the plumbing, we disallow the deduction and increase the award to $10,278.84. ($10,354.84 minus $76.00, the latter amount representing a refund of rent.)
The trial judge also awarded $603.00 for loss of rent, based on Mrs. Ayala's testimony. However, although Mrs. Ayala stated her son had moved on July 13 into one apartment which had rented for $76.00 per month, she claimed a rent loss of $228.00 for that apartment. Since the vacancy by her own testimony existed only for 1½ months, the loss for this apartment was only $114.00. We reduce the award for loss of rent to $489.00.[6]
We also reduce the award of $713.00 for damage to clothing and furniture. Mrs. Ayala testified she gave away *652 damaged clothing and substantiated this with receipts from a charitable organization. However, she replaced the damaged furniture and included the bills for replacement items in the receipts for repairs. To allow this amount would thus allow double recovery, and we therefore reduce the award to $288.00, the value of the damaged clothing.
Mrs. Ayala.'s appeal reurges her claim for mental anguish caused by the damage to her property. Recovery of damages for emotional stress, unaccompanied by physical injury, has been limited to those cases where:he disturbance causes bodily harm or illness. Carimi v. Saia, 301 So.2d 895 (La.App. 4th Cir. 1974). We therefore reject this claim.
Wrongful Death Damages
Ayala was 54 years old at the time of his death. His only income was derived from rental property which he maintained and managed. After Ayala's death his wife collected the rents and hired workmen to perform maintenance and repairs as required.
Mrs. Ayala is entitled to damages for loss of her husband's services based on the pecuniary value of the benefits she would reasonably have expected, had her husband not died as a result of negligence. A method of measuring the value of this loss is by determining the cost of replacing the services.
A real estate management expert testified for the purpose of estimating the value of services for maintaining and managing the properties. He stated the normal fee for management and rental collection was 10% of the amount collected, and the fee for obtaining estimates and supervising maintenance repairs was also 10%. Projecting the anticipated normal repairs over the next five years, he estimated a fee for repair supervision at $178.83 per year. Since Ayala's rent collections were about $5,700.00 per year, the fee for management and collection would be $570.00 per year. Thus, Ayala's services (exclusive of the repair work done by him) were reasonably valued at about $750.00 per year. The value of his services as a repairman was difficult to estimate, since his tax returns showed only the amounts he paid for materials and for labor by others, and these amounts fluctuated greatly. Mrs. Ayala's tax return for 1972 showed only small expenditures for labor and materials during that year.
The award of $25,200.00 for the loss of these services was based on an undiscounted value of $1,400.00 per year over Ayala's life expectancy of 18 years. Mindful that awards of this type are speculative in nature and not calculable with mathematical certainty, we nevertheless conclude that this award was excessive in view of the evidence. On this record we believe that an award of $8,500.00 for this item of damages would accomplish substantial justice.
Defendants concede funeral expenses were proved in the amount of $1,170.00.
Defendants contest as excessive, however, the awards for loss of love, companionship and affection in the amounts of $25,000.00 to the wife and $12,500.00 to the son, while Mrs. Ayala's appeal seeks an increase in her award.
Mr. and Mrs. Ayala enjoyed a close relationship during their 24 years of marriage. Ayala was very attentive to his wife, and she was extremely dependent upon him. In view of these considerations and Ayala's life expectancy, we cannot say that the award was so excessive or inadequate as to constitute an abuse of discretion.
Ayala's son visited him often, and Ayala helped his son with house and car repairs and contributed to support the son, who was a college student in 1971. We cannot say from the evidence that the award of $12,500.00 was excessive.
*653 As to the final issue raised by Mrs. Ayala's appeal, the evidence does not establish that her husband sustained conscious pain and suffering prior to his death, and we decline to grant an award for this element of damages.

DECREE
Accordingly, the judgment of the trial court is amended to reduce the total amount of the award to $58,225.84. As amended, the judgment is affirmed.
Amended and affirmed.
NOTES
[1] As to any argument that Del Buno's failure to use the fire extinguisher superceded the prior negligence by Bailey's executives, we cannot say from the record that, if he had used the extinguisher, he would have gotten the fire under control.
[2] The application for a new trial by one defendant did not suspend the operation of the judgment as to a co-defendant who did not apply for a new trial. Payton v. Aetna Life & Cas. Co., 299 So.2d 489 (La.App. 4th Cir. 1974), cert. den. La., 302 So.2d 617.
[3] This question is pertinent whether the defendant's responsibility is based on strict liability under C.C. an. 667 et seq and 2315, as plaintiffs urge [see Langlois v. Allied Chemical Co., 258 La. 1067, 249 So.2d 133 (1971)1, or on simple negligence.
[4] In the determination as to whether there is a duty-risk relationship, foreseeability is a relevent inquiry, but is not the sole criterion. Rules of conduct and duty are designed to protect some people under some circumstances against some risks. Always pertinent, however, is an inquiry into the ease of association between the rule relied upon and the injury produced from the risk created by violation of that rule. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Malone, Ruminations on Cause-in-Fact, 9 Stanford L.Rev. 60 (1956). In the present case there is an ease of association of the duty breached with the risk of fire and with the additional risk that owners of adjacent property will be injured in attempting to protect their property.
[5] Since compensation is based on the loss of value sustained, the most accurate method of measuring the loss in value is to ascertain the cost of restoring the property to substantially the same condition. No adjustment to this measure is warranted unless the restored property has a substantially lesser or greater value than it had before the injury.
[6] Defendants concede a reasonable rent loss of approximately $500.00.