Earl CALDWELL, Plaintiff-Appellee,

v.

FORD MOTOR CO., and Allen Russell Ford, Inc., Defendants-Appellants.

Court of Appeals of Tennessee,
Eastern Section.

April 30, 1981.

Permission to Appeal Denied by Supreme Court Aug. 3, 1981.

Louis C. Woolf, Hugh B. Bright, Jr. of Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, for Ford Motor Co.

David T. Black, Maryville, for plaintiff-appellee; Martha S. L. Black, Knoxville, of counsel.

## OPINION

FRANKS, Judge.

In this products liability case, Ford Motor Company appeals a verdict of damages for personal injuries for $150,000.00 awarded by a jury to plaintiff on the theory of strict liability against Ford Motor Co., the manufacturer of a pickup truck.

Plaintiff Caldwell is a home builder and was in the process of transporting a load of building materials to a job site when his truck suddenly caught fire. Plaintiff was injured while hurriedly unloading the building materials from the bed of his newly-purchased Ford pickup truck, after the fire had broken out in the engine area of the truck. The injury occurred as plaintiff was pulling a 57 pound piece of siding from the truck and he experienced a severe pain in his back which brought him to his knees. He suffered a ruptured intervertebral disc with resulting permanent partial disability.

At the outset we observe, as to evidentiary issues in jury cases, we are limited to determining whether there is material evidence to support the verdict. It is our responsibility on review to take the strongest legitimate view of all the evidence in favor of the verdict and to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict and to discard all to the contrary. *Pullins v. Fentress Cty. Gen. Hospital, Etc.*, 594 S.W.2d 663 (Tenn.1979); *Crabtree Masonry Co. v. C & R Construction, Inc.*, 575 S.W.2d 4 (Tenn.1978); *Valentine v. Conchemco, Inc.*, 588 S.W.2d 871 (Tenn.App.1979).

The first issue raised is the trial court should have directed a verdict in favor of the defendant because the plaintiff failed to present a *prima facie* case of proximate causation between the fire and the injury. Ford states the issue thusly in its argument:

The fire did not burn or otherwise injure the plaintiff. The sole issue is whether or not the fire caused the plaintiff to unload the building materials or caused the plaintiff to unload the materials in such a manner as to be a proximate cause of the plaintiff's injuries.

And pointedly asserts it was the strain of pulling the siding off of the truck, that plaintiff would have done regardless of the fire, which alone caused his back injury and not the fire in the front of the vehicle. This argument fragments the issue of causation and a proper analysis of this issue must, of necessity, embody the scope of proximate causation.

The issue of proximate cause is for the jury's determination unless the facts and inferences establish beyond dispute that all reasonable men would agree on the outcome. *Frady v. Smith*, 519 S.W.2d 584 (Tenn.1974); *Kroger Co. v. Giem*, 215 Tenn. 459, 387 S.W.2d 620 (1964); *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276 (Tenn.App.1977). Essentially, for the purposes of this appeal, Ford admits a practi-

cally brand-new pickup truck which suddenly and inexplicably catches fire is a defective and unreasonably dangerous product, see T. C. A., § 29–28–101, et seq.; however, Ford argues it should not be held liable for the plaintiff's injuries because there was no factual causation between Ford's defect and plaintiff's injuries.

■ Ford correctly asserts that causation in fact is the first requirement of proximate causation, and argues because plaintiff experienced his injury as he pulled a 57-pound piece of siding from the truck, a motion he would have used in removing material whether he had been doing so hurriedly or not, it cannot be said that "but for" the defect and the resultant fire, plaintiff would have been injured. The testimony of Dr. Leon Willien, an orthopedic surgeon who treated the plaintiff, is offered in support of this view. Dr. Willien testified:

Q. Is it more probable than not that a person who was either off-balance or in a hurry would rupture his disc than if he were doing it in a slower, more established manner, or if he had some assistance in removing that type of siding or sheeting?

A. Well, I would think that his disc could rupture whether he was in a hurry or not.

While Dr. Willien indicates the plaintiff's injury could have occurred whether he had been in a hurry or not, it, in fact, occurred as he hurriedly removed the materials from the burning truck. Plaintiff's testimony was:

Q. When you got to the site, when you would have gotten to the site, whenever you would have done it had there not been a fire, you would have had to pull a sheet of siding that weighed fifty-seven pounds; right?

A. Right.

Q. And you'd have to pull it and get it down onto the ground and then start pulling the rest of them one at a time to stack it one on top of the other?

A. That's correct.

Q. Now on the afternoon of this incident, you got out of the truck and you went to the rear of the car; right?

A. The truck, yes, sir.

Q. And you began to pull off the siding one sheet at a time?

A. No, sir, I wasn't pulling it off. I was yanking it off and slinging it up into the garage away from the truck.

Q. Do you remember in your deposition, and you remember what I told the jury this morning, I asked you on page 13, "How did you take it off?" Your answer was: "Well, I was on one side of the siding, pulling it up and pulling it out and getting it back into the carport, and one of the grandkids, both of them then, were back in the carport helping to line it up as I pulled it off the truck." Then I said: "You were pulling one sheet at a time off?" And you answered, "Yes, sir." Now is that an accurate statement?

A. So far as it goes. It does not go ahead and say, of course, that I was pulling them off and slinging them back into the garage. I should have said at the time that I was slinging them back in the garage.

Q. Then later on, on the next page, you said, "As I told you, I personally pulled the sheets off of the truck and the grandchildren were in the carport helping to line the sheets up." You meant to add that you were slinging the sheets?

A. That's the only way I could get them from the truck into the garage.

. . . . .

Q. What would you have done otherwise? How would you have done it had there not been the fire; that's what I asked you; and your answer was "I would have taken my time."

A. Well, I would have taken my time and would have pulled off the sheets and stacked them up just like I said, which is what I normally do. This was not something that was new to me. It's something I have done hundreds of

times. I know how I do them. What I do, I back the truck up to where I'm going to unload it, pick up the sheet, back up and let it drop onto the ground, and then I walk back on top of that sheet and pull the next one out and let it drop onto it, and that's the way I normally do it, taking my time, no getting myself into a bind I shouldn't be getting into.

Q. Mr. Caldwell, in order to begin to move the sheet that weighed fifty-seven pounds, you had to give it a tug?

A. First I picked up the edge of it.

Q. And then you have to give it a pull?

A. Well, actually—

Q. You've got to move it?

A. That's right, and with my weight, if I'm doing it like I normally do it, without having to sling it away from where I'm unloading it, where my truck is parked, then I'm letting my weight do most of the job. I'm not using my back and my muscles too much.

The record establishes that plaintiff unloaded the material in a significantly different manner than normal. He hurriedly removed the building materials and would sling the heavy materials away from the truck to avoid a spreading of the fire. Both Dr. Willien and Dr. Steve Natelson, a neurosurgeon who also treated plaintiff, testified that the medical cause of the ruptured disc was the activity plaintiff was pursuing when he first experienced the severe back pain. Dr. Natelson testified that the medical cause was the removal of the building material from the truck "in the specific circumstances described", *i. e.*, in a hurry. Both doctors testified that the strain placed on the back by this particular activity was clearly sufficient to cause a ruptured disc. It would be "absurd to say that the only reasonable conclusion is that the accident would have occurred even had no defect existed". *See Winnebago Industries, Inc.,* *supra.* The evidence that a strain sufficient to rupture plaintiff's disc could have been required in the normal unloading of building material does not, as a matter of law, relieve defendant from liability if his con-

duct has caused plaintiff's injury. *Louisville & Nashville Railroad Co. v. Northington,* 91 Tenn. 56, 17 S.W. 880 (1891); *Ison v. McFall,* 55 Tenn.App. 326, 400 S.W. 243 (1964); *Methodist Hospital v. Ball,* 50 Tenn. App. 460, 362 S.W.2d 475 (1961).

A case conceptually similar to the case *sub judice* is *Finks v. Gillum,* 38 Tenn.App. 304, 273 S.W.2d 722 (1954). In that case, the plaintiff alleged her miscarriage was caused by the defendant's negligence in operating his automobile into the rear of the automobile occupied by plaintiff. The defense argued that since miscarriages can occur spontaneously, any attempt to causally relate plaintiff's miscarriage to the accident would be mere conjecture. The court held where there was material evidence of causation and "... if the minds of reasonable men might differ from the proved facts as to whether the conflicting probabilities or inconsistent theories, are equally supported by the evidence, the case must go to the jury." At p. 311. *Accord: Elrod v. Town of Franklin,* 140 Tenn. 228, 204 S.W. 298 (1917); *Silcox v. Smith County,* 487 S.W.2d 652 (Tenn.App.1972); *Meeks v. Yancey,* 43 Tenn.App. 667, 311 S.W.2d 329 (1957).

It follows that Ford cannot be relieved from liability on the evidence a ruptured disc can occur spontaneously, especially since plaintiff's symptoms were experienced while he engaged in the specific activity capable of providing strain on his back sufficient to cause the injury. Moreover, the record establishes that plaintiff moved the material in a significantly different manner than he ordinarily would have. And there is no proof that plaintiff would have injured his back had he unloaded the lumber in his normal manner. The record indicates plaintiff was, at the time of the fire, healthy, active and had no history of back problems. In fact, he often normally unloaded building material in his job as a building contractor. Thus, there is material evidence of causation in fact if plaintiff's response to the manifestation of Ford's defect, the fire, did not break the chain of causation.

■ Recovery under the theory of strict liability requires a showing that the product caused the injury complained of. § 402A of the *Restatement (Second) of Torts* states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby *caused* to the ultimate user or consumer, or to his property, . . .

[Emphasis added.]

See also Tennessee Products Liability Act, *T. C. A.*, § 29–28–105(a).[1]

■ Accordingly, proximate causation is required to recover on the theory of strict liability. Ford did not, and does not, raise as a defense contributory negligence or a voluntary assumption of the risk but, in effect, would have us ignore plaintiff's response to the defect and the resulting fire. The issue, however, is concisely stated in Ford's brief, quoted above, *i. e.*, whether or not the fire caused the plaintiff to unload the materials in such a manner as to be the proximate cause of plaintiff's injuries. Obviously, had plaintiff remained inactive after extricating himself from his truck he would not have been injured; however, we believe plaintiff's activities were a normal incident of the risk created by the defective truck.

■ Prosser describes activities such as plaintiff undertook as a "normal intervening cause" and considered foreseeable by the courts. He concludes that reasonable attempts by the actor to defend his property or his rights or privileges do not supersede defendant's liability and the rule is not limited to spontaneous or instinctive actions but applies though there is time for thought. Prosser, *The Law of Torts*: ch. 7, *Proximate Cause*, § 44 *Intervening Causes* (4th ed., 1971).

A normal intervening cause is described by Prosser as (1) an event which may reasonably be expected to occur now and then; (2) an event not unlikely if it did suggest itself to the actor's mind; (3) the event is closely and reasonably associated with the immediate consequences of the defendant's act and form a normal part of its aftermath; and (4) and to that extent the act is not foreign to the scope or risk created by the original negligence. *Id.*, at 276–7.

■ Ford, in effect, argues that plaintiff's attempt at removal of his building materials from the burning truck should, as a matter of law, break the chain of causation and supersede defendant's liability since it argues the "rescue doctrine" as developed in Tennessee does not apply to one injured in an effort to protect personal property from peril, citing *Railroad v. Ridley*, 114 Tenn. 727, 86 S.W. 606 (1905). An analysis of Tennessee case law establishes that the rescue doctrine applies to attempts to save personal property if the attempt is not rash or reckless. *Chattanooga Light & Power Co. v. Hodges*, 109 Tenn. 331, 70 S.W. 616 (1902), discussed cases from other jurisdictions for and against extension of the rescue doctrine to attempts to preserve personal property and, while purporting not to choose between the two, the court in fact followed the holdings of the cases extending the doctrine to rescue of personal property "where [the] effort to save property has been such as a reasonably prudent man would have made under similar circumstances." 109 Tenn. at 336, 70 S.W. 616. In that case, plaintiff was denied recovery because her decedent was reckless and unreasonable in re-entering a burning building to call the fire department, his attempt being described as "foolhardiness" by a policeman on the scene.[2]

■ The latest Tennessee case to address the rescue doctrine is *Lennon Company v. Ridge*, 219 Tenn. 623, 412 S.W.2d 638 (1967), which, we believe, expresses the correct view. The Supreme Court stated:

---

1. (a) A manufacturer or seller of a product shall not be liable for any injury to person or property *caused* by the product unless the product is determined to be in a defective condition or unreasonably dangerous . . . .

[Emphasis added.]

2. A Tennessee Court of Appeals decision, however, erroneously cites the case for the proposition that usually the rescue doctrine does not apply to rescue of personal property. *Morgan v. Treadwell*, 23 Tenn.App. 100, 126 S.W.2d 888 (1938).

The "rescue" doctrine is familiar in negligence cases. A wrongdoer who negligently imperils the person or *property* of another is held to *foresee* the coming of the rescuer, and injuries sustained by the rescuer are said to be within the scope of the risk created by the original wrongdoer's negligence, and are said to be within the chain of proximate causation, unless they are so reckless or unusual as to be beyond the scope of *reasonable foreseeability.*

412 S.W.2d at 640. [Emphasis added.] The foregoing language presents the rescue doctrine as one of foreseeability, *i. e.,* if the attempt at rescue is a rational one in the light of facts and circumstances existing at the time, it is a foreseeable risk of one's culpable act or omission. This is clearly the majority view. *See, e. g., Henjum v. Bok,* 261 Minn. 74, 110 N.W.2d 461 (1961); *Green v. Britton,* 22 Conn.Sup. 71, 160 A.2d 497 (1960); *Rushton v. Howle,* 79 Ga.App. 360, 53 S.E.2d 768, 769 (1949); Prosser, *supra,* ch. 7, *Proximate Cause,* at 277. This view is further reinforced by the *Restatement (Second) of Torts,* § 496E:

(1) A plaintiff does not assume the risk of harm unless he voluntarily assumes the risk.

(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

(a) . . . or

(b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

In effect, Ford's defective truck forced plaintiff to choose between encountering the fire by removing the material or letting his property burn with the truck. Ford could not reasonably expect plaintiff to forego a reasonable attempt to exercise his rights to the property. Moreover, it is a

principle of tort law that one is under a duty to exercise reasonable care to mitigate one's damages. *Southeastern Greyhound Lines v. Groves,* 175 Tenn. 584, 136 S.W.2d 512 (1940)

■ The testimony indicates the reasonableness of plaintiff's subjecting himself to the perils of the fire to protect his building material and the partially constructed house from fire damage. He was protected from the blaze itself by the cab and bed of the truck. Unlike the plaintiff in *Chattanooga Light & Power,* he did not foolhardily encounter the blaze. In fact, he retreated from his original plan to move the truck away from the site because the fumes from the fire had filled the cab. Plaintiff acted rationally throughout the ordeal, sending two of his grandchildren to call the fire department and setting up his two other grandchildren to stack the material as he removed it from the truck. In fact, the fire did not injure him. Material evidence supports the finding plaintiff was reasonable in encountering the fire.[3]

■ Remaining, is the issue of whether plaintiff's injury is foreign to the scope of the risk created by the defective product. We think not. Arguably, the injury would not fall within the scope of the risk under the "but for" test of causation, which has been expounded in several Tennessee cases. *See Shouse v. Otis,* 224 Tenn. 1, 448 S.W.2d 673 (1969); *Winnebago Industries, Inc., supra; De Rossett v. Malone,* 34 Tenn.App. 451, 239 S.W.2d 366 (1950). But Ford's exclusive reliance on the "but for" test overly simplifies the causation problem and ignores a further test developed or accepted by the Tennessee Courts as more suitable to determine causation issues where a chain of causation exists as here. This test was initially applied by the Tennessee Courts in *Carney v. Goodman,* 38 Tenn.App. 55, 270 S.W.2d 572 (1954):

---

**3.** *See* cases allowing recovery for injuries where plaintiff was attempting to control a fire to protect property. *Ayala v. Bailey Electric Co.,* 318 So.2d 645 (La.App.1975), *rev. granted* 322 So.2d 770 (La.1976); *Haverstick v. South-* ern *Pacific Co.,* 1 Cal.App.2d 605, 37 P.2d 146 (1934); *Stewart v. Jefferson Plywood Co.,* 255 Or. 603, 469 P.2d 783 (1970). *Also see* Anno., 91 A.L.R.3d 1202.

In every case the question of proximate cause, . . ., involves first an inquiry into the question of cause in fact. If the inquiry shows that defendant's conduct, in point of fact, was not a factor in causing plaintiff's damage, that ends the matter. But if it shows his conduct was a factor in causing plaintiff's damage, then the further question is whether his conduct played such a part . . . as makes him in the eye of law the author of such damage and liable therefor.

.    .    .    .    .

The best definition and the most workable test of proximate or legal cause so far suggested seems to be this: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a *substantial factor* in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." [Citations omitted.] [Emphasis added.]
270 S.W.2d at 575.

The test was subsequently embraced by the Tennessee Supreme Court in *Lancaster v. Montesi*, 216 Tenn. 50, 390 S.W.2d 217 (1965), and further affirmed in *Tennessee Trailways Inc. v. Ervin*, 222 Tenn. 523, 438 S.W.2d 733 (1969). Clearly, there is substantial evidence to support the determination that Ford's defect, which resulted in the fire, was a substantial factor in causing plaintiff's back injury, having set in motion the forces which caused plaintiff to elect to undertake the unloading of building materials at a time and in the manner in which he was injured.

Finally, the injury should not be considered foreign to the scope of the risk created by the defective product because of the rationale underlying strict liability. *Ellithorpe v. Ford Motor Company*, 503 S.W.2d 516 (Tenn.1973), states:

The manufacturer is held strictly liable because he can more easily spread the risk of loss caused by his products, and because to do so encourages him to take greater care in designing and manufacturing his products. [Citations omitted.]
As our Court of Appeals has said:

"Obviously when our Supreme Court first adopted the doctrine of strict liability in tort (citation omitted), that Court meant for the law applicable to cases brought under that doctrine to be different from the law applicable to a lawsuit based on ordinary negligence."

.    .    .    .    .

The conduct giving rise to strict products liability is likewise not based upon negligence, and the defendant may be liable without proof of a lack of care. Restatement (Second) of Torts, Sec. 402A, comment m at 355. Thus, the Restatement, . . . states that strict products liability is "similar in nature" to the absolute liability imposed upon defendants who conduct ultrahazardous or abnormally dangerous activities or who harbor dangerous animals. [Citations omitted.]
503 S.W.2d at 521–2.

*Contrast Friendship Telephone Company v. Russom*, 43 Tenn.App. 441, 309 S.W.2d 416 (1957), as to ordinary negligence.

Professors Noel and Phillips in their textbook *Products Liability—Cases and Materials* (West Publishing Co., 1976), agree with Ellithorpe's equation of causation in the products liability context with the risk of loss associated with the maintenance of an inherently dangerous condition. Their explanation of the theory is as follows:

Another reason for application of the foreseeability rule . . . is that given by Harper and James in a similar context— that of the vicarious liability of the employer for the acts of the employee. They write: "We are not here looking for the master's fault but rather for risks that may be fairly regarded as typical of or broadly incidental to the enterprise he has undertaken. Now one of the purposes for such a quest is to mark out in a broad way the extent of tort liability (as a cost item) that it is fair and expedient to require people to expect when they engage in such an enterprise, so there can be a reasonable basis for calculating this cost. And while many things may enter

into the matters of fairness and expediency besides what men at any point may reasonably expect, . . . yet fairness probably cannot be altogether divorced from some kind of foreseeability. What is reasonably foreseeable in this context, however, is quite a different thing from the foreseeably unreasonable risk of harm that spells negligence. In the first place, we are no longer dealing with specific conduct but with the broad scope of a whole enterprise. Further, we are not looking for that which can and should reasonably be avoided, but with the more or less inevitable toll of a lawful enterprise. The foresight that should impel the prudent man to take precautions is not the same measure as that by which he should perceive the harm likely to flow from his long-run activity in spite of all reasonable precautions on his part.

Ch. 8, p. 528.

*Accord*: Prosser, *supra, Strict Liability*, ch. 13, at 522.[4]

Under the test formulated above, it cannot be said that plaintiff's injury was unforeseeable. Certainly it is foreseeable that purchasers of pickup trucks will use their trucks to transport personal property. Furthermore, the foreseeability that any property so transported will be imperiled if the truck contains a defect which causes it to catch fire is beyond dispute. The rescue doctrine indicates that it is foreseeable that one will make a rational attempt to rescue personal property placed in peril.[5] Consequently, it is not outside the contemplation of the reasonable person that a party might injure his back while unloading property from a burning truck.

We conclude that the issue of proximate causation was properly submitted to the jury on the evidence in the record.

In a separate issue, Ford contends that by charging the jury on the rescue doctrine, the court removed from the jury the issue of foreseeability of plaintiff's injury. As noted, *supra,* the rescue doctrine is another articulation of the foreseeability test of proximate causation. The charge, in effect, placed the foreseeability issue with the jury in a form applicable to the facts before the court, which was proper on the evidence.

Ford takes issue to this portion of the trial judge's instructions to the jury:

> The proximate cause, you've heard us talk about that subject down here several times. There are several definitions of it, and you are charged that it may be defined as (1) that act or omission which immediately causes or fails to prevent the injury, an act or omission occurring or concurring with another which, if it had not happened, the injury would not have been inflicted; or (2) an act or omission that is a substantial factor in bringing about the injury; or (3) an act or omission which results in an injury to the plaintiff that is reasonably foreseeable by the defendant.

This portion of the charge was apparently inspired by the following statement in *Winnebago Industries, supra*:

> "In Tennessee, proximate cause has been described as that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, if it had not happened, the injury would not have been inflicted".

222 Tenn. at 528, 438 S.W.2d at 735. Other cases characterize an act as proximate cause if it is a "substantial factor" in

---

**4.** The explanation must lie in part in the element of wilful creation of an unreasonable risk to others by abnormal conduct which is inherent in most of the strict liability cases; and in part in the policy which places the absolute responsibility for preventing the harm upon the defendant, whether his conduct is regarded as fundamentally anti-social, or he is considered merely to be in a better position to transfer the loss to the community. The statutory policy of

the workmen's compensation acts, which places all risk upon the defendant, finds a parallel in strict liability at common law.

At 522.

**5.** "Danger invites rescue. The act [of rescue], whether impulsive or deliberate, is the child of the occasion." (Cardozo, J.) *Wagner v. International Ry. Co.*, 232 N.Y. 176, 181, 133 N.E. 437, 19 A.L.R. 1.

bringing about the injury. [Citations omitted.] ... Some recent cases, particularly those involving the question of whether an "intervening cause" will relieve the defendant of liability, have employed the test of whether the defendant should reasonably have foreseen the injury.

566 S.W.2d at 281.

Ford contends because various definitions were charged in an alternative sense, the jury could have decided the case without finding the requisite causation in fact. A review of the charge in its entirety establishes the jury was instructed they must find causation in fact before they imposed liability on the defendant. The court further charged the jury:

> The plaintiff must show by a preponderance of the evidence that there was a causal relationship between the defect, if any, and the injuries or damages claimed by the plaintiff. That is, they must show that the defect, if any, was the proximate cause of the injuries and damages sustained.
>
> The first requirement of proximate causation is that the defect in the product, if any, be a *cause in fact* of the injury. *This means that the injury would not have occurred but for the defect or but for the fire in this case.*
>
> [Emphasis added.]

This portion of the charge clearly sets out the law as Ford argues it should be. By instructing the jury that causation in fact is the first requisite element of plaintiff's proof, the court cured any error in the portion of the charge alluded to by Ford. Moreover, it is arguable whether the language is erroneous or not. The first two alternatives are paraphrases of causation in fact; definitions accepted in Tennessee case law by two independent lines of cases, and the third alternative is a test often discussed by Tennessee cases in conjunction with proximate cause issues. All three can be supported by Tennessee case law.

■ Where language synonymous with a technical requirement of a cause of action omitted from a jury charge is otherwise contained in the charge, the charge is not erroneous. *McCandless v. Oak Constructors, Inc.,* 546 S.W.2d 592 (Tenn.App.1976). *Cf., Moseley v. Goodman,* 138 Tenn. 1, 195 S.W. 590 (1917). We, therefore, conclude the language, if in error, was harmless when the full charge is considered. *T. C. A.,* § 27–1–117.

Defendant excerpts another statement from the charge claiming it is erroneous because it fails to require the injury to be caused in fact by the defect. This issue is controlled and determined on the reasons set out in the foregoing discussion.

■ Ford's final issue is based on a question posed to Dr. Natelson by plaintiff's counsel, where the doctor was asked whether "... the physical impairment which you describe and the subsequent injury and pain which Mr. Caldwell experienced was either caused or whether the predominant and procuring cause was the fire and subsequent rapid removal of material from the truck?" Ford argues the form of the question is reversible error in that it allows the doctor to testify to the causal connection between the fire and plaintiff's injuries, a matter clearly outside the realm of the doctor's field of evidentiary competence. Of course, the doctor cannot testify as to the issue of proximate causation, but the erroneous nature of the question is not reversible error for at least two reasons. The question was not worded so as to distinctly ask Dr. Natelson whether the fire caused plaintiff's injuries; the question was whether the fire and subsequent rapid removal of material from the truck caused the back injuries. The doctor testified that the cause of the injury was the activity and mentioned nothing about the fire itself. Ford admits in its brief that the response to the question was proper and did not substantively violate the doctor's realm of competence. If the answer was stricken from the record, sufficient evidence remains to support the jury's finding that the injury was caused by the activity of the plaintiff in response to the fire caused by Ford's defect. Moreover, the response brought out evidence no different from that repeated

over and again in both direct and cross-examination of both doctors. In light of the doctor's response, any error is harmless. *T. C. A.*, § 27–1–117. *See also, Cook v. Blytheville Canning Company*, 210 Tenn. 414, 359 S.W.2d 828 (1961).

We resolve the issues raised on appeal against Ford Motor Company and affirm the judgment, and remand the case to the trial court with costs incident to the appeal assessed against appellant, Ford Motor Company.

SANDERS, J., and GEORGE F. McCAN-LESS, Special Judge, concur.