**Richard J. MEDALIE, Plaintiff,**

v.

**Daniel R. FERRY, Defendant.**

**No. CIV. A. 96–1516 (RWR/JMF).**

United States District Court, District of Columbia.

Dec. 11, 1998.

Alvin Friedman, Washington, DC, for Richard J. Medalie.

Richard J. Medalie, Washington, DC, pro se.

Richard David Paugh, Rockville, MD, for Daniel R. Ferry.

FACCIOLA, United States Magistrate Judge.

## FINDINGS OF FACT

1. Richard J. Medalie ("Medalie") and Daniel R. Ferry ("Ferry") practice law in the District of Columbia. Prior to the creation of the law firm known as Medalie and Ferry, Medalie was partners with Alan Friedman, Esq. When Friedman expressed his intention to retire, Medalie and Ferry had discussions as to an association between them.

2. During the first half of 1988, they shared expenses only, but on July 1, 1989, the law firm of Medalie and Ferry came into existence.

3. During the period from July 1, 1988 through December 31, 1989, the parties agreed that there was a partnership between them and they held themselves out to the world as partners. They differ, however, in their views of the nature of the partnership relationship.

4. The parties never reduced their partnership agreement to writing.

5. Medalie and Ferry kept records which indicated which of them generated which fees.

6. In the period from July 1, 1988 to December 31, 1988, the records reflect that Medalie generated $38,968.00 in client fees and Ferry generated $ 27,765.00 in client fees.

7. In that same period Medalie drew $21,500.00 against the profits generated from those six months. Ferry drew $21,000.00, five hundred dollars less than Medalie.

8. In the period from January 1, 1989 to December 31, 1989, the records reflect that Medalie generated $103,967.00 in client fees and Ferry generated $175,642.00 in client fees.

9. In that same period Medalie drew $44,000.00 against the profits generated from that year and Ferry drew $53,828.51.

10. In 1988 and 1989, the Medalie and Ferry firm submitted tax returns indicating that each partner's percentage of profit sharing was 50%.

11. At the conclusion of 1989, Ferry decided to terminate his present relationship with Medalie and replace it with another arrangement in which they shared common expenses, paid their own expenses, and did not divide revenue in any manner.

12. I find that during the period from July 1, 1988 to December 31, 1989, the parties agreed to the partnership and to the concomitant equal sharing of profits. I discredit the testimony of Ferry that there was a contrary understanding or agreement.

## CONCLUSION OF LAW

I conclude that in the time period from July 1, 1988 to December 31, 1989 there existed a partnership between Medalie and Ferry which contemplated an equal distribution of profits. There was no agreement to the contrary and in the accounting between Medalie and Ferry, Ferry is not entitled to any differential fees he generated in excess of the fees Medalie generated.

## MEMORANDUM OPINION

The cobbler's children never have shoes. Two distinguished lawyers who, I am certain, insist that their equally distinguished clientele "get it in writing," entered into a relationship which both described as a partnership but never reduced their understanding of this relationship to writing. Now that they have fallen out, they differ fundamentally as to the nature of that relationship.

Plaintiff, Richard Medalie, ("Medalie") insists that for the period of time in question, from July 1, 1988 to December 31, 1989, the two men had a "true partnership," a traditional agreement to share profits and losses. According to Medalie, that the defendant, Daniel R. Ferry ("Ferry") generated more revenue in that period of time or any period of it is irrelevant to the accounting he seeks. Sharing profits and losses equally is the essence of a partnership and, in the absence of an agreement to the contrary, the Uniform

Partnership Act contemplates an equal sharing of profits.

The defendant, Daniel Ferry, agrees that there was a partnership but it did not call for a sharing of profits. To the contrary, he insists that he and Medalie had an understanding that, while they would share all expenses equally, the division of profits was to be a function of each's fee generation. Thus, because in the period in question he generated more income from the clients, he claims to have been "his" clients, the division of fees for that period must reflect that discrepancy and he must be awarded a credit in the accounting to the extent that the fees he generated exceed the fees Medalie generated.

Under Medalie's approach, the division is the traditional "50–50" split. Under Ferry's approach, however, the division is a function of who generated what revenues. If, in a given year, he generated more revenue than Medalie he is under no obligation to share it with Medalie. Instead, Medalie keeps what he generated, less half of the expenses, and Ferry does likewise.

In the absence of an agreement, the Uniform Partnership Act, adopted in the District of Columbia, (D.C.Code. § 41–154.1) requires an equal division of profits among the partners. Accordingly, in *Robinson v. Nussbaum*, 11 F.Supp.2d 10 (D.D.C.1997), Judge Greene, finding that the partners never did arrive at an agreement as to how the profits to the firm would be divided, invoked this provision of the Uniform Partnership Act to decree an equal distribution of profits among them. Medalie sees in this case support for his position that Medalie's and Ferry's agreement to be partners compels an equal distribution of profits. But, that argument does not completely carry the day because Ferry insists that there was an agreement to the contrary as to the division of profits which the Uniform Partnership Act permits. There are, however, much more profound problems with Ferry's analysis.

The courts have indicated that the very essence of a partnership is the sharing of profits and losses and the Uniform Partnership Act codifies this principle. D.C.Code § 41–154.1. *See e.g. Payton v. Aetna Life and Casualty Co.*, 299 So.2d 489, 494 (La.Ct.App. 1974); *Chaiken v. Employment Security Commission*, 274 A.2d 707, 710 (Del.Super.1971); *Jenkins v. Brodnax White Truck Company*, 437 S.W.2d 922, 926 (Tex.Civ.App. 1969); *Fernandez v. Garza*, 88 Ariz. 214, 354 P.2d 260, 263 (Ariz.1960); 68 C.J.S. § 17 (1950). According to Ferry, the "partners," share expenses equally but do not share profits. Therefore, had Ferry come to court claiming there was a partnership between him and Medalie and showed in support of his claim what he asserts was their understanding, he would have been met by the certain judicial conclusion that, since he and Medalie did not agree to share the profits of their enterprise, they did not have a partnership. They merely had an agreement to share expenses. Thus, Ferry asks the Court to create a mongrel or, better, a unicorn, in which lawyers who call themselves partners nevertheless divide expenses but keep a sharp division between them as to the distribution of profits and do not share them.

Surely, if any one, let alone an experienced lawyer, was going to have such a relationship he would not describe it as a partnership yet that is exactly what Ferry did. He and Medalie held themselves as the firm of Medalie and Ferry and he has acknowledged in the pleadings filed in this Court that there was a partnership between them. Indeed, Ferry specifically indicated to the Internal Revenue Service in the tax returns which he and the partnership filed that he and Medalie were sharing profits in perfect equality, despite his present representation that was not their understanding. As Medalie's counsel so capably pointed out, in the entire history of their relationship, the tax returns are the only pieces of paper signed by them which speaks to their agreement as to the division of profits between them. It describes them as having an equal share of the profits of Medalie and Ferry and directly contradicts Ferry's testimony to the contrary.

Additionally, as Ferry cannot deny, in 1988, the discrepancy in revenue generation favored Medalie; he generated more revenues than Ferry. Medalie, however, did not insist on any adjustment despite Ferry's claim that, in such a situation, Medalie would

be entitled to more than the 50% of the annual revenues. There is no reason to believe that Medalie, for no apparent reason, would abandon an entitlement to more money than he got, if, as Ferry claims, their agreement clearly entitled Medalie to the additional money and Medalie knew it. Perhaps, more to the point, Ferry never objected to getting 50% of the revenues in 1988, even though he supposedly knew that he was not entitled to that 50% because Medalie generated more revenues than Ferry did. Surely, the division between them cannot be so conveniently a function of whose ox is being gored.

Additionally, as Ferry seems to forget, his mongrel arrangement is against his own economic self interest. In a law firm, certain expenses, such as filing fees, can be attributed to a client and billed to that client. Others, denominated overhead, such as rent and utilities have to be deemed a cost of doing business and the partners must share them equally. There is a third category of expenses, however. Like anyone in business, lawyers must spend money to make money and will therefore incur expenses which are not overhead and cannot be charged to an existing client. In this case, Medalie traveled to Hawaii to attend a meeting of the American Bar Association Section on Litigation, hoping that it would, in the long run, produce business. Similarly, according to Medalie, Ferry traveled to London in the hopes of generating more business from an existing client. It is clear that each was aware of the other's trips and signed the checks, drawn on the firm account, reimbursing each other for the expenses incurred. But, each dollar spent necessarily reduced the ultimate profit each man would get since common expenses were shared. Since that is so, why would Ferry agree to pay a penny of Medalie's prospective business getting expenses if Ferry would never share in the fees that Medalie's trips would ultimately generate because, according to him, a "partner's" profits were an absolute function of what he alone generated? I believe that, to the contrary, Ferry was willing to pay his share of such expenses because, contrary to his assertion, he and Medalie agreed to share all profits and he had as much interest in the profits Medalie would generate as he had in the profits he would himself generate.

An analogous problem arises if a prospective business trip was successful and Ferry, let us say, brought in substantial new business that was beyond his capability to complete. In such a situation, he would have to ask either Medalie to help him with the new work or hire an associate to do it. But, since Medalie, under Ferry's theory, will never share in the revenues generated by the new business, he has no motivation to either help Ferry or share with him the costs of getting him help. Since that is so, Medalie and Ferry cannot undertake the representation because of its inability to service the new client's needs. The business will therefore go elsewhere. Under Ferry's theory, stagnation in the form of restriction to the firm's existing business and clients seems inevitable and the firm seems doomed to failure. I cannot see why capable lawyers who are equally capable businessmen would agree to such a self defeating proposition.

Finally, having heard both men testify, I find that Medalie's testimony that he and Ferry had a true partnership to be true. On the other hand, I find Ferry's explanation of their relationship to be at such odds with the traditional notion of a partnership as lawyers would use those words and so against his own economic interest and Medalie's that I cannot credit his assertion that he and Medalie agreed to it. I fear that Ferry's explanation is a *post hoc* rationalization, animated by his regret that he agreed to be Medalie's partner in the traditional sense of sharing profits and his lack of foresight to forge an understanding with Medalie of what the division of profits would be if one lawyer generated substantially more business than the other.

I therefore conclude that, contrary to Ferry's assertion, he and Medalie had a true partnership in the period of question and the profits were to be divided equally between them. I therefore see no basis for the adjustment Ferry seeks and will disallow it in the final accounting.

The adjustment represents the lion's share of the parties' disagreement. At the conclu-

sion of the trial, Medalie's counsel indicated to me that once I resolved the dispute over the adjustment he would welcome the opportunity to see if he and Ferry's counsel could agree on the final financial calculations. I will therefore give the parties such an opportunity and ask them to submit to me January 9, 1999 either an agreed, proposed judgment, indicating what is due from Ferry to Medalie or, failing an agreement, a statement as to what legal and factual issues remain for me to resolve.

An order accompanies this opinion.

### ORDER

Pursuant to my Memorandum Opinion, it is hereby

**ORDERED** that Ferry is not entitled to a $94,992.10 differential in the final accounting.

It is **FURTHER ORDERED** that the parties are to submit to me, by January 9, 1999, either an agreed, proposed judgment, indicating what is due from Ferry to Medalie or, failing an agreement, a statement as to what legal and factual issues remain for me to resolve.

**SO ORDERED.**