299 So.2d 489 (1974)
Abraham PAYTON
v.
AETNA LIFE AND CASUALTY COMPANY et al.
No. 5853.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1974.
Rehearing Denied September 10, 1974.
Writ Refused November 15, 1974.
*490 Edward M. Gordon, III, and R. M. Donahue, Metairie, for plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer & Matthews, Allen R. Fontenot, New Orleans, for defendants-appellants Aetna Casualty and Surety Co. and T & L Sheet Metal, Inc.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, R. Henry Sarpy, Jr., New Orleans, for defendants-appellees The Travelers Ins. Co.
Drury, Lozes & Curry, James H. Drury and Madison C. Moseley, New Orleans, for defendants-appellees Hendee Homes, Inc., and American Employers Ins. Co.
Before LEMMON, J., and FEDOROFF and GAUTHIER, JJ., Pro Tem.
LEMMON, Judge.
Plaintiff, a roofing contractor injured on a construction job, filed this workmen's compensation action against T & L Sheet Metal, Inc., Hendee Homes, Inc., Frederick *491 Construction Company, Inc.,[1] and their respective insurers. The general contractor for the job was a joint venture composed of Hendee and Frederick, and T & L was a subcontractor.
Finding from the evidence that Payton was either T & L's employee or T & L's subcontractor who spent a substantial portion of his work time in manual labor, the trial court rendered judgment against T & L and its insurer and dismissed the other defendants. T & L appealed suspensively. Plaintiff also filed a devolutive appeal, complaining of that portion of the judgment which dismissed the other defendants.
The primary issue on appeal is whether T & L is liable to plaintiff for compensation benefits by virtue of its relationship with plaintiff in the performance of subcontracting work for the joint venture.

TIMELINESS OF PLAINTIFF'S APPEAL
At the threshold we raised this issue sua sponte, inasmuch as plaintiff's appeal, if untimely filed, must be dismissed because that portion of the trial court judgment dismissing the general contractors and their insurers became definitive. C.C.P. art. 1842; C.C. art. 3556(31).
The following dates are pertinent:
May 10, 1972 (Wednesday)Notice of Judgment mailed.
May 15, 1972 (Monday)T & L and its insurer timely applied for a new trial.
July 6, 1972Application for new trial denied.
September 12, 1972Plaintiff filed motion for appeal and filed bond two days later.
Thus, under C.C.P. art. 2087, if plaintiff's delay for taking a devolutive appeal did not commence until T & L's application for a new trial was denied on July 6, then his appeal was timely. However, if plaintiff's delay commenced on May 16 (when plaintiff did not apply for a new trial on or before May 15), his appeal was untimely. Stated otherwise, the issue is whether T & L's application for a new trial extended the delays within which plaintiff was required to file his appeal.
In Thurman v. Star Electric Supply, Inc., La., 283 So.2d 212 (1973), the Supreme Court cited Wright, Jr. v. Mark C. Smith & Sons, La., 283 So.2d 85 (1973) for the proposition that a "motion for a new trial by one defendant does not operate as if it were a motion for a new trial on behalf of all defendants." However, that issue was not precisely before the court in the Wright case, inasmuch as the defendant who did not apply for a new trial failed to perfect his appeal timely, even if his delay was calculated from the date of denial of the other party's new trial application.
In the Thurman case, a concursus proceeding, Thurman applied for a new trial, complaining of the denial of attorney's fees and certain costs. The trial court then granted the attorney's fees, but denied the demand for costs. Within the devolutive appeal delay calculated from the date of judgment on new trial (but not within the delay if calculated from the date of original judgment), one of the competing claimants appealed. In the course of the opinion the Supreme Court specifically discussed and rejected the argument that if any application for a new trial has been timely filed, the delay for any party to take an appeal commences only after the application is denied. The court also cited with approval the statement in State, Department of Highways v. D & J Realty Co., 245 So.2d 465 (La.App., 2d Cir. 1971) that "the filing of a motion for a new trial by one defendant does not suspend the operation of a judgment as to a co-defendant who has not filed a motion for [a] new trial."[2]
*492 In spite of the above statements, the court refused to dismiss the appeal as untimely. Admittedly, the trial court had granted a partial new trial, and the Supreme Court was primarily concerned with interpreting C.C.P. art. 1971, relative to holding the judgment in abeyance as to all parties and all issues. In effect, however, the Supreme Court stated a general rule (that an application for new trial by one party suspends only the commencement of that party's delay for filing an appeal) and then proceeded to hold that the general rule is simply not workable under all circumstances.[3] Since in the present case we can find no similarity to the unusual circumstances in Thurman, we are compelled to follow the general rule and accordingly hold the appeal was untimely.[4]
While plaintiff's untimely appeal arguably could be considered an answer to T & L's appeal, a judgment may be modified as between appellees only through an appeal and not by answer to appeal. Placid Oil Co. v. North Central Texas Oil Co., 206 La. 693, 19 So.2d 616 (1944). See also 1968 revision comment under C.C.P. art. 2133.
Accordingly, plaintiff's appeal must be dismissed.

MERITS
As to the relationship between plaintiff and T & L at the time of the accident, the trial court found that plaintiff was "an employee or independent contractor of T & L." However, contending plaintiff was its partner or joint venturer, T & L argues it is not liable for compensation to a party who occupied that status.
Plaintiff had been a roofing contractor for 18 years. At the time of the accident he operated a sole proprietorship and employed at least three laborers. Plaintiff supervised the employees and performed some of the roofing labor.
T & L was a corporation engaged in sheet metal work in the construction field. Anthony Matise, the principal stockholder, managed the business and supervised the work performed by the corporate employees.
At times in the past plaintiff and T & L had collaborated to perform subcontract work for various general contractors with plaintiff supplying the labor and materials for the roofing portion of the job and T & L supplying the labor and materials for the sheet metal portion. The Seventh Street job, on which plaintiff was injured, was the third job on which plaintiff and T & L had worked together with Hendee-Frederick as the general contractor.
Matise testified that on the first job plaintiff's bid had already been accepted by Hendee-Frederick when plaintiff called him and asked him to perform the sheet metal portion of the contract. As to the next two jobs, he asserted that he and plaintiff each took the plans and specifications, that each calculated a price for his respective portion of the subcontract, and that they then jointly submitted a bid for the entire subcontract.
In substance, T & L contends it entered into a partnership or joint venture agreement with plaintiff to perform the subcontract on the Seventh Street job.
The only written contract in evidence pertained to the second job, which was still in progress when plaintiff was injured on the third job on Seventh Street. That contract was prepared by plaintiff and purported to be between plaintiff and Hendee, but at Hendee's insistance T & L was added as a contracting party. The document provided for all sheet metal and roofing work at one fixed contract price and stipulated *493 that "(a)ll labor is covered by workman (sic) compensation."
Although there was no evidence of a written contract on the third job, plaintiff testified that the arrangement on that job was different from the written contract on the second job. He asserted that Hendee-Frederick "called Mr. Matise and he in turn called me to come and figure out the job with him." In substance, plaintiff contended that he had no direct contract with Hendee-Frederick on the Seventh Street job, but rather was T & L's sub-subcontractor.
Jack Biguenet, Hendee's construction superintendent who acted as superintendent of the joint venture, was the person who obtained the subcontracting bids. Biguenet testified that he had obtained bids from T & L; that since he had experienced difficulty with plaintiff on previous construction jobs, he required that T & L agree to replace plaintiff in the event of unsatisfactory performance; and that he considered T & L to be the roofing and sheet metal contractor.
Frederick's president, who knew of Biguenet's past problem with plaintiff, testified that Hendee-Frederick agreed with T & L for the roofing and sheet metal work for one contract price. He stated that T & L was responsible for plaintiff's work. In fact, he had called T & L during the second job to request that someone finish plaintiff's work, which was lagging. However, neither he nor Biguenet had any personal knowledge of the relationship between plaintiff and T & L.
Hendee-Frederick made all checks payable jointly to T & L and plaintiff, Frederick's president stating that the purpose was to protect against liens. When several checks were issued, T & L and plaintiff endorsed and divided the checks. However, if only one check was issued, T & L usually deposited the endorsed check and issued plaintiff a corporation check for his portion of the payment. On one occasion plaintiff deposited the endorsed check and issued his check to T & L for its portion.
On all three jobs plaintiff hired and paid his own employees and purchased the roofing materials required for the jobs, and T & L did the same as to the sheet metal portion of the work.
The facts recited above indicate Hendee-Frederick apparently intended to look to T & L for performance of the roofing and sheet metal subcontract and was not significantly concerned as to whether or not plaintiff was a party to the contract. However, as to T & L's contention of partnership status, the existence of a partnership is determined by examining the express or implied relationship established between the parties themselves. In this respect we find no merit in plaintiff's contention that their relationship on the third job was different merely because Hendee-Frederick called T & L to request the bid. Plaintiff admitted that he and Matise then "figured out the job" and submitted a joint bid, which was essentially their undisputed arrangement on the second job.
Nevertheless, we cannot conclude that the relationship between T & L and plaintiff constituted a partnership or joint venture. They did not agree to share profits or losses, but simply agreed that each would perform a specific portion of the contract at a fixed remuneration to each party. Apparently, if plaintiff's cost of roofing materials increased, this cost would come out of his portion of the calculated contract price; and if T & L's cost of sheet metal decreased, T & L would receive the entire windfall.
Thus, it was possible that plaintiff could lose money on the venture, while T & L made a profit.[5] This is contrary to the essence *494 of a partnership, which contemplates that all partners will lose or all partners will profit. The absence of an agreement to share profits, as required by C.C. art. 2811, is fatal to T & L's contention of the existence of a partnership.
We find the relationship was one in which two independent contractors agreed between themselves to perform specified portions of a construction subcontract, while each obliged himself to the general contractor to be responsible for performance of the entire subcontract.[6] This is a relationship as between obligors in solido. C.C. art. 2091. Each may be compelled for the whole, but performance by one exonerates the others as to the obligee. By dividing responsibility for performance between themselves, each became liable as between obligors only for the performance of his part of the obligation. C. C. art. 2103. As to the portion of the obligation which concerned only his coobligor, each was only the coobligor's surety. C.C. art. 2106.
We construe the subcontract as essentially two contractsone between Hendee-Frederick and T & L, with plaintiff guaranteeing T & L performance, and the other between Hendee-Frederick and plaintiff, with T & L guaranteeing plaintiff's performancefor a lump sum price. This relationship between plaintiff and T & L is not the type which gives rise to compensation liability on the part of one for injuries sustained by the other. Plaintiff was not T & L's employee, since he was not paid wages and was not subject to T & L's control. Neither was he T & L's subcontractor, since he (along with T & L) was obliged to perform the entire contract undertaken by T & L.
Plaintiff was Hendee-Frederick's subcontractor. Compensation liability for plaintiff's injuries rested with Hendee-Frederick, if plaintiff qualified under R.S. 23:1021(6) as an independent contractor who spent a substantial part of his work time in manual labor. We do not reach this issue, however, because plaintiff's appeal from the judgment dismissing Hendee-Frederick and their insurers has been dismissed.
For these reasons, the judgment of the trial court is reversed, and it is now ordered that plaintiff's suit be dismissed.
Reversed and rendered.

APPENDIX
Our interpretation in this case of C.C.P. art. 2087 unduly complicates the practice of law and in many cases results in substantial injustice.
C.C.P. art. 2087 provides that a devolutive appeal must be taken within 90 days of:
"(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;" (Emphasis supplied)
In the present case there was a timely application for a new trial, so the plaintiff apparently calculated his appellate delays from the date of "the court's refusal to grant a timely application for a new trial." See C.C.P. art. 2087(2). We now tell the plaintiff that C.C.P. art. 2087(1) means "no application" has been filed timely by him.
The purpose of this Appendix is to point out to the Law Institute and the Legislature that no substantial utility is accomplished by permitting appellate delays in multiparty litigation to commence against one party when one or more other parties have applied for a new trial. On the other hand, a great deal would be accomplished by suspending commencement of all appellate delays when any party applies for a new trial, especially since the granting of one party's application (under *495 the present interpretation of C.C.P. art. 2087) results in confusion as to the status of all other parties in regard to the finality of the original judgment. We state our view that a much more practical and workable rule is to delay commencement of appellate delays until any new trial application is disposed of.
Perhaps this is what the Legislature intended in writing C.C.P. art. 2087. Certainly, this is a reasonable interpretation of the wording of that article, although C.C. P. art. 1971 literally implies (as stated in Thurman) that when a partial new trial is granted, the original judgment can become final as to some parties or some issues. In any event, since two interpretations of the article are possible, legislative clarification is appropriate to uncomplicate the already too complex practice of law. The bar can never be adequately informed by judicial interpretation alone, especially in rules of procedure. It is particularly unfortunate in a Civil Law state to have an ambiguous article governing an important step in procedure.
NOTES
[1] Frederick was not a named defendant, but its insurer was sued directly on the basis of Frederick's liability.
[2] In the D & J Realty Co. case one defendant applied for a new trial (which application was never acted upon), and the other defendant then appealed suspensively. The Second Circuit simply held that the appeal by one party before action upon another party's application for a new trial was not premature.
[3] See also Thibodeaux v. Lock Clinic, La. App., 1974, 299 So.2d 514.
[4] See Appendix.
[5] In fact, plaintiff testified that he lost money on the Seventh Street job, because of the necessity of hiring someone to perform the labor he would have performed himself, except for the injury.
[6] Each admitted he would not be paid unless both the roofing and sheetmetal portions of the contract were performed satisfactorily.