ROLAND L. BELSOME, Judge.
hThe plaintiff, Emelia Wilfred, appeals the trial court’s judgment denying her claim for worker’s compensation death benefits. For the following reasons, we affirm.

FACTS' AND PROCEDURAL HISTORY

The plaintiff instituted a suit against the defendant, A Service Cab Co. Inc. (“A Service”), to recover worker’s compensation benefits for the death of her father, Joseph Wilfred, who was robbed and murdered while driving a cab on December 16, 2012. After trial and the filing of post-trial memoranda, the court rendered a judgment denying the plaintiffs claim for death benefits, and the case was dismissed with prejudice. This appeal followed.

DISCUSSION

The plaintiff raises three principal assignments of error: 1) the trial court erred when it found that the decedent was not an employee of A Service; 2) the trial court erred in finding that the decedent was an independent contractor, rather than an employee, as independent contractors are not covered under the Worker’s ^Compensation Act;[1] and 3) alternatively, *1010 she argues that the trial court erred in not finding that the decedent fell under the manual labor exception for independent contractors, since independent contractors who perform a substantial amount of manual labor are not excluded from the Act. The plaintiff, however, has incorrectly interpreted the trial court’s judgment regarding the second assignment of error. In its judgment, the trial court found that the decedent was not an employee, an independent contractor, or primarily engaged in manual labor for A Service at the time of his death; therefore, it denied and dismissed the plaintiffs claim.[2] Since the plaintiffs second and third assignments of error, regarding independent contractors, are based on ah incorrect interpretation that the trial court found the decedent to be an independent contractor, they are not pertinent to our discussion. Thus, the only issue remaining before this Court is whether the trial court erred in finding that the decedent was not an employee of A Service.
The plaintiff makes two principal arguments relative to the employment relationship issue: 1) A Service could not overcome the statutory presumption that |3the decedent was an employee of A Service; and 2) the trial court’s factual findings and legal conclusions were not supported by the record.[3]
The existence or non-existence of an employment relationship between A Service and the decedent is a mixed question of law and fact to be reviewed under the manifest error standard. See Bob v. Benoit, 96-4, p. 3 (La.App. 3 Cir. 5/8/96), 673 So.2d 1321, 1322; Hillman v. Comm-Care, Inc., 01-1140, p. 13 (La.1/15/02), 805 So.2d 1157, 1165.

PRESUMPTION OF EMPLOYMENT

Ordinarily, an employee’s exclusive remedy against his employer for an on-the-job injury is workers’ compensation. La. R.S. 23:1032. La. R.S. 23:1044 provides that “[a] person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter,” thereby creating a statutory presumption of employment status. Hill-man, 01-1140, p. 6, 805 So.2d at 1161. The presumption is rebuttable.
The alleged employer bears the burden of proof in overcoming the presumption set forth in La. R.S. 23:1044 and showing that a worker was not his employee for workers’ compensation purposes. Campora v. Falstaff, L.L.C., 01-2014, p. 3 (La.App. 4 Cir. 6/12/02), 823 So.2d 389, 391. “An alleged employer |4can rebut this presumption by either (i) establishing that the services were ‘not pursuant to any trade, business, or occupation (e.g., con *1011 struction of one’s private residence)’; or (ii) establishing that the individual was performing services but was doing so as an independent contractor.’ ” Whitlow v. The Shreveport Times, 02-1215, p. 2 (La.App. 3 Cir. 4/23/03), 843 So.2d 665, 667 (citing 1 Denis Paul Judge, Louisiana Workers’ Compensation, § 7:6). In determining whether the presumption is rebutted because the services were not “pursuant to any trade, business, or occupation” of the alleged employer, the initial inquiry is whether the work is a “business pursuit” of the alleged employer. Hillman, 01-1140, p. 6, 805 So.2d at 1161.
In the instant case, A Service presented evidence that it provided services to the decedent, rather than the decedent providing work pursuant to a business pursuit of A Service. At trial, the testimony of Thomas Zorthian, the President and operating manager of A Service, established that A Service did not pay wages to the decedent. Instead, the decedent paid a weekly fee to access A Services’ radio dispatching system and goodwill. We find this evidence sufficient proof to rebut the presumption that the decedent was an employee of A Service. Therefore, further analysis is required to determine whether an employer-employee relationship existed.

EMPLOYEE STATUS

The determination of whether an employer-employee relationship exists is based upon the “the right to control.” Hillman, 01-1140, p. 8, 805 So.2d at 1162. DThe four primary factors evidencing the right to control are: 1) selection and engagement; 2) payment of wages; 3) power of dismissal; and 4) power of control. Id. None of these factors alone is determinative of an employer/employee relationship. Rather, the totality of circumstances must be considered. Tate v. Progressive Sec. Ins. Co., 08-0950, p. 8 (La.App. 4 Cir. 1/28/09), 4 So.3d 915, 920. The burden of proof is on the party seeking to establish an employer-employee relationship. Hillman, 01-1140, p. 9, 805 So.2d at 1163. The trial court apparently concluded that the plaintiff failed to meet her burden of proving the existence of an employment relationship between the decedent and A Service.
The record reveals the following about the factors evidencing a right to control. Regarding the first factor, selection and engagement, the ultimate power of selection is determinative of status. Rush v. Employers Nat. Ins. Co., 598 So.2d 603, 606 (La.App. 4th Cir.1992). The power of selection rested with Mr. Zorthian, an agent of A Service, who approved the decedent’s application for employment as a driver. Mr. Zorthian did testify that the employment application was used for convenience, but it was not actually for employment, it was just for informational purposes.
As to the second factor, payment of wages, A Service did not pay any salary to its drivers; rather, the drivers paid a weekly fee to A Service to access its radio dispatch system and goodwill. The drivers set fares, with the exception of charge accounts, which were set by A Service. They set their own hours, assessed the | (^system at their convenience, and obtained payment for services directly from the customer.
The third factor, power of dismissal, focuses on whether the work undertaken can be discontinued or terminated by either party without a corresponding liability for its breach. Rush, 598 So.2d at 606-07. A service could temporarily discontinue the dispatch service when a driver failed to comply with certain rules and regulations, such as personal appearance and behavior. However, A Service did not prevent the drivers from servicing other customers while either joined in or restricted from the system. There is noth *1012 ing in the record to indicate a formal termination or discipline- process. Nor is there evidence of any consequence or liability of either party for terminating services.
The final factor, control, is the linchpin of the employer-employee relationship. One element indicative of this type of control is supervision of the work by the principal. Id. at 607 (citation omitted). Here, A Service provided a training manual, which provided regulations to the drivers’ operations, including dress codes, meter runs, maintenance, and behavior, when using the dispatching system. However, the record reflects that many of the policies in the manual were to ensure compliance with the Jefferson Parish Code of Ordinances, protect its goodwill, or maintain effective dispatch communication services; and, compliance was rarely enforced.
Another element of control looks to the source of materials and equipment to be used by the worker. When the principal provides the equipment and supplies to 17perform the job, the relationship is usually one of employment. Id. Here, drivers could own or rent their cabs. A Service did not own any of the cabs. The decedent rented his cab from Star Cabs Inc.[4] A Service supplied the insurance as a service to Star Cabs, and also paid for inspection stickers. The owners of the cabs were responsible for obtaining a Certificate of Public Necessity and Convenience; A Service did not possess any such certificates. The drivers were responsible for maintaining their vehicle, and paying for gasoline. For a fee, the drivers could utilize the radio dispatch service provided by A Service, and, in conjunction, were required to follow certain guidelines to maintain effective communication, the goodwill of the company, and access to that service.
In summary, the evidence presented corroborates that the decedent filled out an “employment application” with A Service, which was only used for informational purposes. It was the decedent who utilized the dispatch and goodwill services provided by A Service. In turn, A Service received a fee from the decedent for its services, and decedent was paid by his customers. A Service offered minimal supervision to the drivers, which was associated with the services offered, and did not provide any materials or equipment, other than insurance and inspection stickers.
Under the totality of these circumstances, the record supports the conclusion that A Service did not exercise the necessary control over the decedent’s work so |Ras to constitute an employment relationship.[5] Thus, we cannot conclude that the trial court was manifestly erroneous in finding that the decedent was not an employee of A Service.[6] Accordingly, the *1013 trial court’s judgment denying the plaintiff’s claim for worker’s compensation benefits is affirmed. For these reasons, the plaintiff’s request for attorney’s fees and penalties for the wrongful denial of her claim is denied.
AFFIRMED

. La. R.S. 23:1021(7) states:
'Independent contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. The operation of a truck tractor or truck tractor trailer, in-eluding fueling, driving, connecting and *1010 disconnecting electrical lines and air hoses, hooking and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter.

. On appeal, we review the correctness of the judgment. See Moreno v. Entergy Corp., 12-0097, p. 19 (La. 12/4/12), 105 So.3d 40, 52 (citation omitted) ("appellate courts review [a] judgment, not reasons for judgment.”

. Notably, Mr. Zorthian is the president of both A Service and Star Cabs; however, the plaintiff did not attempt to pierce the corporate veil or have Star Cabs and A Service treated as a single business enterprise in this case.

. See Hendricks v. United Cab, Inc., 96-117 (La.App. 4 Cir. 1/15/97), 687 So.2d 610 (taxicab company did not exercise sufficient control and direction over taxicab driver’s work to create employment relationship, and, thus, it could not be held liable for driver's actions under doctrine of respondeat superior; although drivers were required to be affiliated with taxicab line and could take advantage of group insurance rates, they owned and maintained their own vehicles, were responsible for obtaining city taxicab license, paid their own insurance, determined their own schedules, hours and which fares to accept, and were paid directly by customers).

."Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.” Harold A. Asher, CPA, LLC v. *1013 Haik, 12-0771, p. 4 (La.App. 4 Cir. 4/10/13), 116 So.3d 720, 723.