Judge Joy Cossich Lobrano
| fin this workers’ compensation case, plaintiffs/appellants, Mariana Orozco (“Or-ozco”), individually and on behalf of her deceased alleged husband Filiberto Serna, Jr. (“Decedent”) and their minor child *1021 Aggie Serna (“Aggie”) (collectively “Claimants”), appeal the December 4, 2015 judgment of the Office of Workers’ Compensation (“OWC”), which rendered judgment in favor of the defendant/appel-lee, Aries Building Services, Inc. (“Aries”), and against Claimants.
On September 21, 2013, Decedent was killed in a construction accident while attempting to move a series of trailers located at a-United States Navy facility in Belle Chasse, Louisiana. At the time of the accident, Decedent was being paid by Filser Construction (“Filser”), which was a subcontractor of Aries.
On August 15, 2014, Orozco filed a disputed claim for compensation, Form LDOL-WC-1008 (the “disputed claim” or “1008”), against Filser and Aries, alleging that Orozco was the wife of Decedent and was entitled to bring a claim for death benefits against both of Decedent’s alleged employers. Decedent’s father Filiberto .Serna, Sr. (“Serna, Sr.”), the owner of Filser and Aries, filed separate | ^responsive pleadings to the 1008 on behalf of Filser and Aries, each contending that Decedent was performing work as an independent contractor and was not their employee.
On November 13, 2014, Orozco filed a first supplemental and amending 1008 adding Aggie as an additional claimant. Orozco alleged that Aggie was the minor child of both Orozco and Decedent, the dependent of Decedent, and therefore entitled to death benefits arising from Decedent’s accident.
This matter proceeded to trial on July 8, 2015. The evidence admitted at trial included, in relevant part: 2012 and 2013 joint tax returns of Decedent and Orozco; 2012 joint tax returns of Serna, Sr. and his wife Maria Serna; a series of checks paid by Filser to Decedent; a series of checks paid -by Filser to Orozco; and numerous purchase orders, invoices, and checks from contractors for which Filser performed work. Neither Filser nor Aries called any witnesses to testify at trial. The Claimant called two witnesses, Orozco and Serna, Sr.
Orozco testified as follows. She and Decedent lived together in Houston, Texas for approximately two years, and while she considered him her husband, they never married. Orozco and Decedent had one child together, Aggie. Orozco and Decedent shared a joint checking account, and Orozco and Aggie were dependent on Decedent for all of their income. Serna, Sr., through Filser, would periodically issue checks payable to Orozco if Decedent was away from Houston and Orozco needed money. Orozco testified that all checks corresponded to the work that Decedent performed for Filser, but she did not know what specific work |sDecedent had done respective to each check. However, Orozco was unable to provide a reason why Filser issued two checks on the same date, one to Decedent and one to Orozco. Serna, Sr. also wrote checks and gave cash to Orozco after Decedent’s death to help with Aggie, and paid for Decedent’s funeral expenses, but Orozco was unable to identify the specific amounts paid. Aries sent Orozco a sympathy card with a check for $500.00.
Orozco admitted at trial to underreport-ing Decedent’s income from Filser on their 2013 joint tax return, whieh was filed by Orozco after Decedent’s death. Orozco explained that she underreported the income in order to receive a larger tax refund. With respect to the 2012 joint tax return, Orozco denied knowledge that the tax return reported that Decedent had a construction business. Orozco denied that Decedent was an owner of Filser.
Serna, Sr, provided the following testimony. Filser has been in the construction business for ten years. Filser is not an incorporated company. According to Ser- *1022 na, Sr. there was no written contract between Filser and Aries in 2013, only a verbal contract with Chris Clement, an Aries project manager. At the time of Decedent’s accident, Filser performed work for Aries removing temporary buildings, which were in camps to provide oilfield services. When the accident occurred, Decedent was removing trailers from the job-site. However, Serna, Sr. was not present at the jobsite at that time. Decedent and his colleagues were supervising the job for Filser.
|4Serna, Sr. denied that Decedent was his business partner or his employee. Rather, according to Serna, Sr., Decedent worked for Filser as a subcontractor. Ser-na, Sr. denied that Decedent made any investments in Filser, ever lost money if Filser lost money, or ever risked his own money for Filser’s benefit. Decedent did not pay for tools for Filser. Filser provided tools to Decedent.
Serna, Sr. does not read or speak English, and due to the language barrier, Decedent was the point of contact for Aries. Decedent wrote proposals to contractors only with Serna, Sr.’s authorization. Decedent was a “mediator” to obtain insurance for Filser. Decedent wrote invoices for Filser. Decedent arranged payments using a company card. For each of these tasks, Serna, Sr. would instruct Decedent on how to proceed, and Decedent would follow Serna, Sr.’s directions.
Serna, Sr. instructed Decedent where to report to work from day to day. Decedent was paid per day worked. Serna, Sr. initially testified that all checks payable by Filser to Decedent corresponded to work Decedent performed. However, Serna, Sr. also admitted to paying Decedent on occasions when Filser did not have work; although he stated that such payments were not made frequently. Serna, Sr. did not later deduct these additional amounts from actual earnings corresponding to jobs. According to Serna, Sr., he would make payable certain checks to Orozco if Decedent was out of town and Orozco needed money. Serna, Sr. explained that he issued separate checks to both Orozco and Decedent on the same day if Serna, Sr. did not recall the amount of the first check he provided. Serna, Sr. admitted to underreporting Decedent’s income when ^providing a form 1099 for the 2013 tax return in order to help Orozco. He also admitted that he would lie in order to help Orozco. Serna, Sr. paid funeral expenses for Decedent costing approximately $14,000.00.
On December 4, 2015, the OWC rendered judgment finding that (1) the Claimants were unable to prove an employee-employer relationship with Filser and thus unable to prove that Aries was the statutory employer of Decedent; (2) Decedent and Serna, Sr. were partners of Filser; (3) Orozco was unable to prove her entitlement to death benefits as she and Decedent were never married; (4) Aggie was the child of Decedent; and (5) judgment was rendered in favor of Aries and against Claimants. This appeal followed.
In workers’ compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC’s findings of fact is the manifest error-clearly wrong standard. Dean v. Southmark Constr., 2003-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117. The existence or non-existence of an employment relationship between an alleged employer and a claimant is a mixed question of law and fact to be reviewed under the manifest error standard. Wilfred v. A. Serv. Cab Co., 2014-1121, p. 7 (La.App. 4 Cir. 5/27/15), 171 So.3d 1007, 1010, writ denied, 2015-1271 (La. 9/25/15), 178 So.3d 570.
“In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the *1023 factfinder’s conclusion was a reasonable one.” Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 9 (La. 3/4/98), 708 So.2d 375, 381. See also Roberts v. State/Office of Family Support, 2011-1614, p. 7 (La.App. 4 Cir. 7/5/12), 97 So.3d 570, 574. “[I]f the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Chaisson, 97-1225 at p. 9, 708 So.2d at 381 (quotations omitted).
“When legal error interdicts. the fact-finding process, in a workers’ compensation proceeding, the de novo, rather than the manifest error, standard of review applies.” MacFarlane v. Schneider Nat'l Bulk Carriers, Inc., 2007-1386, p. 3 (La. App. 4 Cir. 4/30/08), 984 So.2d 185, 188.
The primary issue before this Court on appeal is whether Decedent was a business partner of Filser under circumstances that prevent Decedent from qualifying as an employee under the Louisiana Workers’ Compensation Act. Consideration of this issue requires us to determine both whether Decedent was a business partner of Filser and whether Decedent was an employee of Filser.
“A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.” La. C.C. art. 2801. “Each partner participates equally in profits, commercial benefits, and losses of the partnership, unless the partners have agreed otherwise. The same rule applies to the distribution of assets, but in the absence of contrary agreement, contributions to capital are restored to each partner according to the contribution made.” La. C.C. art. 2803.
|7As this Court explained in DeSoto v. Tusa Bros., Inc., 273 So.2d 739, 741 (La. App.4 Cir.1973):
... it has now been settled by the Supreme Court of this state that a partner can be construed as an employee of the. partnership to which he belongs for workmen’s compensation purposes. In Trappey v. Lumbermen’s Mutual Casualty Co.[, 229 La. 632, 86 So.2d 515 (1956)],[footnote omitted] the Supreme Court reasoned that when a person belongs to a partnership and also by contract receives wages not dependent on the profit or loss experience of the partnership, so that his working and pay relationship were contractually separate from the partnership agreement, he may be considered to be an employee of the partnership for compensation purposes. In Carpenter v. New Amsterdam Casualty Companyl, 159 So.2d 757 (La.App.3 Cir.1964)] [footnote omitted] a plaintiff was a partner in a trucking firm with another individual, and was injured while working for the partnership. The partnership was based on a verbal agreement, and each partner agreed that he would own 50% [o]f the business and share equally in the profits or loss thereof. The court in the Carpenter case stated that under proper circumstances a partner could simultaneously be an employee and a partner in the same partnership. However, for this condition to exist it must be shown that the partner contracted separately with the partnership to be an employee and to receive a definite wage or other specific remuneration from the partnership in addition to his share of the profits as a partner. The language of the court also revealed that this contract would have to provide that the partner would be paid irrespective of the profit experience of the partnership, so that he would be entitled to his salary by contract even if *1024 the partnership should lose money, [footnote omitted]
In order for an injured worker to be considered a business partner, he must share in the “profit or loss experience of the partnership.” See id. at 741-42 (partners shared profits and losses on equal basis and shared “overplus” after expenses). See, e.g,, Carpenter, 159 So.2d at 758 (partners shared equally in profits and losses); Brazzell v. Fireman’s Fund Ins. Co., 433 So.2d 779, 780 (La.App.3 Cir.l983)(partner’s earnings were one-half share of partnership profits). See also Pay-ton v. Aetna Life & Cas. Co., 299 So.2d 489, 494 (La.App.4 Cir.1974)(“The | «absence of an agreement to share profits ... is fatal to- T & L’s contention of the existence of a partnership”).
In the matter before us, the OWC provided written reasons for judgment, in pertinent part, as follows:
The testimony and tax returns showed that Serna[,] Jr. [Decedent] was actively involved in the business side of the business [Filser]. Serna, Jr. negotiated contracts, made purchases with the company credit card, and procured insurance for the company. The evidence showed that Serna, Jr. reported on his Federal Income Tax Returns that he owned a construction company named Filser. The tax returns reported profits and losses. Further the testimony of Orozco and Serna, Sr. showed that checks were paid to Serna, Jr. (or Orozco) for work performed, but also additional checks were written that did not necessarily relate to work performed. The testimony presented to the Court did not prove an employer-employee relationship, but instead showed that Serna, Jr. was a partner of Serna, Sr. in the business of Filser.
While we are' mindful of the fact that “[r]easons for judgment are not controlling and do not constitute the judgment of the court,”[1] we find that the record evidence, as characterized by the OWC in its reasons, does not provide a sufficient factual basis to support a finding that Decedent was a partner in Filser’s business.
Specifically, the OWC erroneously concluded that Decedent owned a construction company named Filser and. reported his share of profits and losses generated by Filser. Instead, Decedent’s tax returns established the he reported profits and losses as a construction contractor as a sole proprietorship under Decedent’s name. Serna, Sr. issued Decedent a Form 1099 for the payments made to Decedent. Decedent and Orozco reported the 1099 earnings on their Form 1040, |aSchedule C. Nowhere in Decedent’s and Orozco’s joint tax returns is Filser identified as “owned” by Decedent. Instead, the joint tax returns of Serna, Sr. and his wife Maria Serna reported profits and losses under the business name “Filser Construction” on a Form 1040 Schedule C and attached a 1099 report of earnings from general construction contractors including Aries.
Orozco and Serna, Sr. both testified that Decedent was paid for actual work performed, but also was paid additional amounts that did not correspond to any specific work for Filser. However, the record lacks any evidence that these additional payments corresponded to Filser’s profits. Rather, Serna, Sr. testified that Decedent made no investments in Filser, never risked his own money for Filser’s benefit, and never lost money if Filser lost money. In his trial testimony, Serna, Sr. denied that Decedent was his business *1025 partner and claimed that Decedent was his subcontractor.
“[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Keller v. Monteleon Hotel, 2009-1827, p. 2 (La.App. 4 Cir. 6/23/10), 43 So.3d 1041, 1042 (citing Bosell v. ESCO, 549 So.2d 840, 844 (La.1989)). “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Id. “Reversing a trial court’s findings of fact requires the appellate court to find that the findings are not supported by a reasonable factual basis and that the hnrecord demonstrates that the findings are clearly wrong.” Keller, 2009-1327 at p. 2, 43 So.3d at 1042 (citing Stobart v. State through Dep’t of Tramp, and Dev., 617 So.2d 880, 882 (La.1993)).
Here, the record lacks any evidence to support a finding, that Decedent and Serna, Sr. shared in the profits and losses of Filser. The absence of an agreement to share profits and losses is fatal to the existence of a partnership. See Payton, 299 So.2d at 494. See also La. C.C. arts. 2801 and 2803. While the record evidence supports Decedent’s involvement in the “business side” of Filser, this is insufficient to show that Decedent qualified as a partner or that a partnership existed. Moreover, while we exercise deference to the OWC’s determinations of credibility of the witnesses, and further acknowledge that witnesses testified at trial to having falsely reported Decedent’s earnings, we nevertheless find no reasonable factual basis to support a finding of a partnership based on the testimony and exhibits herein. Accordingly, we find that the OWC was manifestly erroneous in holding that Filser is a partnership and that Decedent was a business partner. We reverse the portion of the OWC judgment holding that Decedent and Serna, Sr. were partners in Filser.
We next turn to the question of whether Decedent qualified as an employee under the Louisiana Workers’ Compensation Act. La, R.S. 23:1044 provides that a “person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee...” This presumption is rebutta-ble. Wilfred, 2014-1121 at p. 3, 171 So.3d at 1010.
[n“An alleged employer can rebut this presumption by either (i) establishing that the services were not ‘pursuant to any trade, business, or occupation (e.g., construction of one’s private residence);’ or (ii) establishing that ‘the individual was performing services but was doing so as an independent contractor.’ ” Hillman v. Comm-Care, Inc., 2001-1140, p. 6 (La. 1/15/02), 805 So.2d 1157, 1161 (quoting 1 Denis Paul Juge, Louisiana Workers’ Compensation § 7:6 (2001)).
“In determining whether the presumption is rebutted because the services were not ‘pursuant to any trade, business, or occupation’ of the alleged employer, the initial inquiry is whether the work is a ‘business pursuit’ of the alleged employer.” Hillman, 2001-1140 at p. 6, 805 So.2d at 1161.
In considering whether the presumption is rebutted because the individual was performing services as an independent contractor, we explained that the lower court must undertake the following analysis:
The distinction between employee and independent contractor status is a factual determination, made on a case-by-case basis, taking into consideration the total economic relationship between the parties and the various factors weighing either in favor of or against an employ *1026 er-employee relationship. Course v. Fox Wolff Const., 2008-0058, p. 4 (La.App. 5 Cir. 5/27/08), 987 So.2d 277, 280. In determining whether the relationship is one of principal and contractor, the courts consider the following factors: 1.) There is a valid contract between the parties; 2.) The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; 3.) The contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered; 4.) There is a specific price for the overall undertaking; and 5.) Specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach. Id., citing Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972).
11¾Steinfelds v. Villarubia, 2010-0975, p. 7 (La.App. 4 Cir. 12/15/10), 53 So.3d 1275, 1280.
Only after the presumption of employment is rebutted does the burden of proof shift to the party seeking to establish an employer-employee relationship. See Wilfred, 2014-1121 at pp. 4-5, 171 So.3d at 1011. If the employer successfully rebuts the presumption of employment, the next inquiry in determination of whether an employer-employee relationship exists is based upon the “the right to control.” Id., 2014-1121 at p. 4, 171 So.3d at 1011 (citing Hillman, 2001-1140 at p. 8, 805 So.2d at 1162). “The four primary factors evidencing the right to control are: (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control.” Wilfred, 2014-1121 at p. 5, 171 So.3d at 1011 (citing Hillman, 2001-1140 at p. 8, 805 So.2d at 1162).
Here, the OWC stated in its judgment that the “Claimants were unable to prove an employee/employer relationship with Filser Construction and thus unable to prove that Aries Building Systems, Inc. was the statutory employer of Filiberto Serna, Jr.” However, the record before us does not show that the OWC undertook the above-described analysis. We find that the OWC erred as a matter of law in failing to determine whether the statutory presumption of employment was rebutted. Having failed to determine under the correct standard of law whether Decedent was an employee, the OWC did not properly reach the issues of whether Decedent was an independent contractor performing manual labor, borrowed | ^employee, or statutory employee or any other employment status that would entitle the Claimants to workers’ compensation benefits, if any.
As the Supreme Court explained in Wegener v. Lafayette Ins. Co., 2010-0810, pp. 19-20 (La. 3/15/11), 60 So.3d 1220,1233-34:
Typically where such legal errors have interdicted the fact finding process, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record. Landry v. Bellanger, 2002-1443 (La. 5/20/03), 851 So.2d 943, 954; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La. 2/20/95), 650 So.2d 742, 745; Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (1980). However, we have also recognized that de novo review is not the best course of action in every case. Ragas, 388 So.2d at 708. This Court explained in Ragas:
This is not to say, and Gonzalesl, 254 La. 182, 320 So.2d 163 (1975)] [footnote omitted] should not be read to require, that the appellate court must find its own facts in every such *1027 case. There are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Ragas, 388 So.2d at 708. [footnote omitted]
The authority for an appellate court to remand a case to the trial court for proper consideration, where it is necessary to reach a just decision and to prevent a miscarriage of justice, is conferred by La. C.C.P. art. 2164.[footnote omitted] Whether a particular case should be remanded is a matter which is vested largely within the court’s discretion and depends upon the circumstances of the case. See Alex v. Rayne Concrete Service, 2005-1457 (La. 1/26/07), 951 So.2d 188,155.
In considering this standard, we conclude that under the specific facts of this case, and the particular legal errors involved, a remand of the case for further proceedings is warranted. Whether Decedent qualified as an employee, 1 ^independent contractor performing manual labor, borrowed employee, or statutory employee, and whether the Claimants are entitled to benefits as a result of the particular circumstances of his work, are issues that are significantly affected by the credibility of Orozco and Serna, Sr. While no factual findings as to credibility were memorialized in the OWC judgment, we acknowledge that credibility of witnesses was at issue in this matter. Orozco testified at trial to making false representations on tax returns. Serna, Sr. admitted under oath that he would lie to help Orozco and did, in fact, assist her in underreporting 2013 income on a form 1099. We find that resolution of Decedent’s employment status, and by extension the Claimants’ entitlement to benefits, if any, necessarily require the factfinder to examine firsthand these witnesses’ demeanor and testimony. We are unable to properly determine the issues involved by examination of the cold record alone. We are “convinced that the interest of justice would be best served by remanding this case for a new trial” of these issues. See Wegener, 2010-0810 at p. 20, 60 So.3d at 1234.
As such, we vacate the portions of the OWC’s judgment adjudicating Decedent’s employment relationship as to both Filser and Aries and rendering judgment in favor of Aries. We remand this matter to the OWC for adjudication as to Decedent’s employment relationship to both Filser and Aries and a determination of any corresponding benefits that may be due.
The Claimants also seek a determination from this Court as to Decedent’s average weekly wage. Because of our conclusion herein and because the OWC did hRnot reach this issue at trial, we need not address the Claimants’ arguments regarding average weekly wage.
The Claimants further seeks attorney’s fees and penalties for bringing this appeal and for bringing the 1008 before the OWC below. They do not brief this issue. “The court may consider as abandoned any assignment of error or issue for review which has not been briefed.” Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4). Accordingly, we deem the issue of whether penalties or attorney’s fees are due as abandoned on appeal.
For the reasons stated above, we reverse in part and vacate in part the December 4, 2015 judgment of the OWC as follows. We reverse the judgment that Decedent and Serna, Sr. were partners of Filser. We vacate the judgment finding *1028 that the Claimants were unable to prove an employee-employer relationship with Filser or statutory employment relationship with Aries. We further vacate the judgment rendered in favor of Aries and against Claimants.
We remand this matter for new trial to determine whether Decedent qualified as an employee, independent contractor performing manual labor, borrowed employee, or statutory employee, Decedent’s employment relationship as to both Filser and Aries, and whether the Claimants are entitled to benefits as a result of the particular circumstances of Serna, Jr.’s work, and for further proceedings consistent with this opinion.
REVERSED IN PART; VACATED IN PART; AND REMANDED

. Kaufman v. Adrian's Tree Service, Inc., 2000-2381, p. 3 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102, 1104.