Judge Regina Bartholomew-Woods JjAppellant, Abe Lowe, III, appeals the September 23, 2016 judgment of the Louisiana Office of Workers’ Compensation (the “OWC”) pursuant to La. R.S. 23;1310.5(A)(2). Therein, the OWC held that Appellant failed to meet his burden of proving he was disabled from work, as a result of injuries sustained in a March 30, 2015 work-related- accident. Accordingly, the OWC denied Appellant’s request for additional medical care for his injuries, and rendered judgment in favor of Appellees, Exxon Mobil Refining & Supply and Exxon Mobil Risk Management, Inc. (“Exxon”). For the reasons that follow, we affirm the judgment against Appellant and in favor of Appellees. FACTUAL BACKGROUND On March 30, 2015, Appellant was working for .Exxon at its Chalmette Refinery as an Operations Supervisor. At the end of a twelve-hour shift, Appellant tripped on railroad tracks at his worksite, causing injury to his left shoulder. On January 15, 2016, Appellant filed a “Disputed Claim for Compensation” that alleged he was entitled to wage benefits (which his employer terminated on December 15, 2015), medical treatment to include physical therapy and epidural [{.steroid injections, and disability. Exxon disputed the claims as unrelated to Appellant’s fall at work. Trial proceeded before the OWC on June 29, 2016. The parties stipulated that the March 30, 2015 accident occurred in the course and scope of Appellant’s employment with Exxon. Additionally, the parties agreed that Exxon had paid all of Appellant’s medical expenses through June 23, 2015. Appellant testified that he was a supervisor at the refinery and that his position was designated as “safety sensitive,” thus requiring drug restrictions and regular drug testing. Before his fall on March 30, 2015, he worked the 4 a.m. to 4 p.m. shift. After his shift, which ran later than normal because his relief showed up late to work, he walked. across on-site railroad tracks, causing him to trip and fall. He explained that he instantly felt pain, and immediately called his shift supervisor. He testified that he was most concerned about his shoulder after the fall because he had recently undergone shoulder surgery, but was also experiencing neck, back, and hip pain. However, he declined medical treatment at the time of the incident because he would have been required to stay on-site several more hours and he had pain medicine at home. A few days after the fall, he visited his medical provider, Dr. Carey Winder, who had performed Appellant’s prior shoulder surgery. Appellant testified that Dr. Winder recommended he take pain medication and undergo some physical therapy. About a month later, Appellant’s treatment graduated to epidural steroid injections into his shoulder. Appellant described experiencing burning sensations in his back, sharp pain in his legs, pain in his neck, and headaches. When he was not at work, Appellant would take, pain medication as prescribed, but relied on over-the-counter treatment when he was working because of the restrictions placed on him by his employer due to the Rsafety-sensitive nature of his job-related duties. Appellant also .visited Dr. David Ferachi, an orthopedic spine surgeon, after a referral from Dr. Winder. On June 23, 2015, Appellant was involved in a motor-vehicle accident. He explained that the motor-vehicle accident exacerbated the pain he was feeling before as a result of the fall at work, to include expansion of pain to his entire back. After the motor-vehicle accident, he visited his chiropractor, Dr. David Corbin, and Dr. Alexis Waguespack, an orthopedic surgeon. Appellant testified that he had informed Dr. Corbin of his fall at work. Dr. Corbin had Appellant undergo a magnetic resonance imaging test (“MRI”) of the lumbar spine, which revealed a bulging disc. Dr. Corbin provided physical therapy treatment to Appellant, while Dr. Wagues-pack prescribed narcotic medication. As a result, if Appellant was experiencing pain to the point that he required the narcotic medication, he would not go into work. After the motor-vehicle accident, he eventually also received epidural steroid injections in his neck and back from another medical provider, Dr. Comeaux. On cross-examination, Appellant again acknowledged that in late 2014, Dr. Winder had performed surgery for his torn rotator cuff, which was due to a non-work related injury, resulting in the occasional need for narcotic pain medication. He also acknowledged that Dr. Winder had placed him under the same work restrictions before and after his fall at work in March of 2015. He was asked whether he told his chiropractor, Dr. Corbin, about his fall at work, and Appellant represented- that he had. Defense counsel referenced Dr. Cor-bin’s medical records 14and suggested that Appellant had not told Dr. Corbin about the fall, but stopped short of full impeachment.[1] Appellant visited numerous medical professionals from the time of the work .accident and following his involvement in the motor-vehicle accident. At trial, the depositions of these medical professionals and Appellant’s medical records were admitted without objection per stipulation of the parties. Appellant first visited Dr. Winder’s office following the work accident.[2] Dr. Winder had previously treated Appellant for his torn rotator cuff prior to his March 30, 2015 fall at work. He explained that Appellant had visited him on March 25, 2015— about' six months after his rotátor cuff operation—and that he was progressing, but still experiencing some symptoms. At this visit, Dr. Winder reported that Appellant’s condition had improved significantly. Six days later, Appellant returned to Dr. Winder’s office following his accident at work, complaining of increased pain and stiffness in his shoulder. Dr. Winder’s initial assessment of the injuries suggested Appellant had experienced a contusion and he did not prescribe narcotic medication, as he opined the injury would heal on its own.[3] Appellant returned to Dr. Winder’s office on April 20,2015, at which time he was experiencing “increased symptoms,” to wit: limited range of motion, some popping, and radiating pain from his shoulder to his elbow. However, Dr. Winder found “no detectable weakness,” and found the pain to be “not anything that was |Breal significant.”[4] However, Dr. Winder did provide Appellant with a cortisone injection prior to the motor-vehicle accident, but only to his shoulder on that date. He testified that Appellant was allowed to return to work with limitations on his ability to lift,.climb, and turn things.. Dr. Winder also referred Appellant to Dr. Ferachi during the. April 20th visit, for “neck and back issues.” Appellant again visited -Dr. Winder on June 18, 2015, before the motor-vehicle accident, and on August 5, 2015, after the motor-vehicle accident. On June 18th, Appellant reported that his symptoms were much better and that his pain was steadily improying, although he did not think he had the strength to do regular work activities. On August 5th, Appellant reported that he continued to experience similar symptoms, but failed to mention the motor-vehicle accident. Dr. Winder did note his observations of Appellant’s neck and back, but he noted nothing that would indicate the need for surgery. Furthermore, Dr. Winder’s report revealed that Appellant’s pain, which had been reported by Appellant as having steadily improved on the June 18th visit, had worsened by the time of the August 5th appointment. Dr. Winder stated that he observed “more symptoms than at least what [he] had documented previously,” noting that Appellant seemed to be having more symptoms, leading him to think there was “some other source ... of the pain.” He described the symptoms as more prominent despite Appellant’s standard progression prior to the August 5th visit. Dr. Winder concluded that he did not believe Appellant reinjured his torn rotator cuff but ordered an MRI for further assessment. Dr. Winder also contradicted the trial testimony of Appellant, as the doctor denied being informed of any other intervening traumatic ' event. He [^explained that he “certainly” would havé noted the motor-vehicle accident had Appellant told him of it. ■ On August 26,2015, Appellant again saw Dr. Winder. During this visit, Dr. Winder reviewed the MRI, which indicated that Appellant had only contused his arm during his March 30, 2015 fall at work. Dr. Wincler concluded that there was no significant damage to-his shoulder,-and he did not anticipate any long-term problems. Again, Appellant did not mention the motor-vehicle accident at this appointment. During Appellant’s final visit on October 7, 2015, Dr. Winder noted that his shoulder was “okay” but that he also described pain radiating down to his hand and pain in his neck. Dr. Winder described these complaints as “different” than what Appellant had previously experienced. He opined that he did not believe the neck pain was related to Appellant’s fall at work. Appellant did not mention the motor-vehicle accident at this visit.[5] Appellant also visited Dr. Ferachi following the work accident.[6] On April 21, 2015, Appellant reported pain in his left hip, lower back, and neck. Dr. Ferachi noted normal cervical spine, neurological, and-lumbar spine exams.[7] He further noted that Appellant had no tenderness in his neck, no pinched nerves, no spinal cord compression, and normal and full range of motion in all planes in his back. He also noted full and painless range of motion in Appellant’s hips and knees, no |7nerve compression in the legs, arid no spinal cord dysfunction. He did note, however, that Appellant was experiencing left side hip pain, which Dr. Ferachi thought could be due to:pain in his left buttocks. At the time, because Dr. Ferachi could fmd no objective signs of injury, he recommended physical therapy and prescribed muscle relaxers.. . Appellant returned to Dr. Ferachi’s office on May 12, 2015, complaining of persisting neck pain, lower back pain, and pain in his right leg. Dr. Ferachi noted tenderness and limited range of motion in the lower back. Dr. Ferachi assessed the pain as cervitealgia, or low back pain with lumbar radiculopathy, and ordered an MRI of the cervical and lumbar spine to further evaluate Appellant’s symptoms. An MRI from May 26, 2015, showed largely normal discs but also some degenerative change. Dr. Ferachi reviewed additional MRIs during a June 4th. visit, recommending exercise at home and the use of anti-inflammatories,' At this appointment, Dr. Ferachi released Appellant from his care and permitted him to return to work with no restrictions-: However, Appellant returned to Dr. Ferachi’s office on November 6, 2015, expressing neck, back, left-side shoulder, and radiating pains. Dr. Ferachi’s notes, however, indicated nothing about Appellant’s involvement in a motor-vehicle accident in the interim period. Additionally, an MRI from October revealed disc herniation in a new area compared to Appellant’s May, 2015 MRI.[8] Following the motor-vehicle accident, on September 10, 2015, Appellant visited Dr. Corbin’s office. He complained of neck and back pain and reported that [she had been involved in a motor-vehicle accident, but failed to mention the work accident. Dr. Corbin ordered a lumbar sacrum MRI and diagnosed Appellant with a cervical sprain and a lumbar sprain with radiculitis and spasrhs; Appellant’s treatment plan-'consisted of physical therapy twice weekly for four to eight weeks. Appellant. also visited Dr. Waguespaek after the motor-yehicle accident, on December 4, 2015, complaining of lower back and leg pain beginning after the motor-vehicle accident. Appellant did not mention his involvement in a work-related, accident at this appointment. Appellant reported that the physical therapy provided by Dr. Corbin was helpful, but the pain still returned. Dr. Waguespaek reported abnormal results from an x-ray of Appellant’s lumbosacral spine and diagnosed him with lumbar post-laminectomy syndrome, prescribing narcotic medications and muscle- relaxers. Appellant returned to Dr. Waguespack’s office on January 25, 2016, complaining, of lower back and leg pain, indicating that the pain worsened in the mornings.[9] Dr. Waguespaek instructed Appellant to continue pain medications and muscle relaxers. Appellant did - not mention the work-related accident to Dr. Waguespaek untiLhis third visit on- February 26, 2016. At this appointment, Appellant stated that the motor-vehicle accident exacerbated the injuries sustained after the work-related accident.[10] STANDARD OF REVIEW In workers’ compensation cases, the standard of review to be applied by an appellate court to the OWC’s findings of fact is the manifest error-clearly wrong standard. Orozco v. Aries Bldg. Sys. Inc., 16-0187, p. 6 (La. App. 4 Cir. 9/28/16), 202 So.3d 1018, 1022, writ denied, 16-1949 (La. 12/16/16), 212 So.3d 1173 (citing Dean v. Southmark Constr., 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117). “ ‘When legal error interdicts the fact-finding process in a workers’ compensation proceeding, the de novo, rather than the manifest error, standard of review applies.’ ” Orozco, 16-0187 at p. 5, 202 So.3d at 1023 (quoting MacFarlane v. Schneider Nat’l Bulk Carriers, Inc., 07-1386, p. 3 (La. App. 4 Cir. 4/30/08), 984 So.2d 185, 188). ANALYSIS The Workers’ Compensation Law provides that an employer shall pay compensation benefits to an employee who suffers personal injury through an accident arising out of and in the course of employment. La. R.S. 23:1031(A). The Supreme Court has- stated that this statute requires a claimant to show personal injury that is the result of an accident, which accident arises out of and in the course of employment. Buxton v. Iowa Police Department, 09-0520, pp. 11-12 (La. 10/20/09), 23 So.3d 275, 283. The chain of causation required by the statutory scheme as adopted by the legislature in La. R.S. 23:1031 is that the employment causes the accident, the accident causes injury, and the injury causes disability. Id. The employee’s burden requires proving by a preponderance of the evidence that the resulting disability is related to an on-the-job injury. Id. at 283. In Prim v. City of Shreveport, 297 So.2d 421, 422 (La. 1974), the Supreme Court stated: Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has h failed to carry the burden of persuasion. Likewise, the plaintiffs case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. The issues before this Court are the medical causation regarding Appellant’s complaints of neck and lower back pain and his resulting inability to work. Subsequent to the accident at work, which gave rise to his initial claim for benefits, Appellant was involved in a motor-vehicle accident unrelated to his employment duties. The parties submitted medical records and depositions from numerous physicians detailing the treatment for Appellant’s injuries following both the work-related accident and. the motor-vehicle accident. The OWC found that Appellant’s back and neck complaints were as a result of the motor-vehicle accident that occurred several months after the work-related accident. The record reasonably supports this finding. When Appellant first visited Dr. Winder after the work accident, Dr. Winder believed Appellant’s injuries only consisted of a contusion to his shoulder that would heal on its own. On a follow-up visit, Appellant complained of increased pain; and Dr. Winder opined that he believed those symptoms developed due to inflammation related to the contusion. ’ Appellant complained of different injuries to Dr. Ferachi, specifically, neck and back complaints; but Dr. Ferachi’s evaluation contained no objective findings of any back or neck injury. On June 4, 2015, Appellant reported to Dr. Ferachi that his back and neck pain persisted but that it had improved. As a result, Dr. Ferachi discharged Appellant from his care on the same date with no work restrictions and no scheduled appointment for a progress report. Dr. Fera-chi’s only recommendation was over-the-counter anti-inflammatory medication, indicating that he did not believe the injury required further treatment. hi During a follow-up appointment with Dr. Winder on June 18, 2015, Appellant reported that his symptoms were much better and his pain had steadily improved. Additionally, the MRIs administered to Appellant prior to the motor-vehicle accident reveal that the neck and back pain Appellant had been experiencing was likely related to the degenerative disc disease identified by Dr. Ferachi. Although Appellant visited Dr. Winder after the motor-vehicle accident, complaining of worsening symptoms, Dr. Winder concluded that the neck pain was not related to the work-related accident. When Appellant visited Dr. Ferachi after the motor-vehicle accident, the MRI results revealed a new herniated disc that was not present before the work-related accident. According to the record, Appellant did not inform either Dr. Winder or Dr. Ferachi of his involvement in the motor-vehicle accident at any subsequent appointments. Further, Appellant had only been given cortisone injections to his shoulder after his work-related accident, but prior to the motor-vehicle accident. Only after the motor-vehicle accident was Appellant given epidural steroid injections to his neck and back from Dr. Comeaux. Lastly, Appellant’s medical records from Dr. Waguespack’s office reveal that Appellant himself stated that his back pain began in June of 2015, after his involvement in the motor-vehicle accident. Appellant reported that he had no pain prior to the motor-vehicle accident. The record further reveals that Appellant did not mention the work-related accident to Dr. Waguespaek until his third visit and reported that the motor-vehicle accident exacerbated the pain from the work-related accident. CONCLUSION 112In light of the foregoing, and considering the credibility determinations made by the OWC, we cannot say that the OWC erred in finding that Appellant failed to meet his burden to show a causal connection between the work-related accident and his lower back and neck injury. The decision of the OWC is hereby affirmed. AFFIRMED . In lieu of live testimony, Dr. Corbin’s deposition testimony and Appellant’s medical records from Dr. Corbin’s office were admitted without objection per stipulation of the parties. . Dr. Winder testified that he is board certified in orthopedic medicine and surgery and was admitted as an expert in that regard. . Dr. Winder noted that Appellant thought his shoulder was just bruised but that he wanted to have it checked as a precaution. . Dr. Winder noted that he believed Appellant's symptoms developed due to inflammation related to the contusion. . Though October 7th was Appellant’s last visit,- Dr, Winder also reviewed , an MRI from October 16, 2015, which revealed multilevel degenerative disc disease, disc herniation, disc extrusion into the neuroforma, and possible radiculopathy, , . Dr. Ferachi testified that he is- a board Certified orthopedic spine surgeon and was admitted as an expert as such, .An x-ray of the lumbar spine showed evidence of a previous L5-S1 fusion but was otherwise normal. An x-ray of- the cervical spine revealed evidence of cervical degenerative disc disease and cervical spondylosis. . Dr, Ferachi’s assessment included a cervical disc herniation, cervical radiculopathy, and cervicalgia and recommended epidural steroid injections. . Dr. Waguespack’s assessment of Appellant at this visit included spinal stenosis of the lumbar ‘ region, sacroiliac disorder, and degeneration of lumbar intervertebral disc. .Dr. Waguespaek noted that Appellant was awaiting approval from his attorney for lumbar- injections. Appellant was instructed to ’ continue medical treatment,